[Civ. No. 25534. Second Dist., Div. Four. Apr. 12, 1962.]

RAYMOND A. PAYETTE, Plaintiff and Respondent, v. JOHN HENRY STERLE, Defendant and Appellant.

Parker, Stanbury, Reese & McGee and Daren T. Johnson for Defendant and Appellant.

Oliver, Good & Sloan, John K. Sloan and Henry E. Kappler for Plaintiff and Respondent.

JEFFERSON, J.—Defendant appeals from a judgment for plaintiff in an action for personal injuries and property damage arising from an automobile collision. Since no question is raised as to the sufficiency of the evidence to support the judgment reference to the evidence introduced at the trial will be made only when pertinent to the issues on appeal.

Defendant first contends the trial court erred in restricting

his cross-examination of plaintiff and a witness called by plaintiff.

More than three years before the accident, which occurred on January 1, 1957, plaintiff, a world war veteran, suffered a nervous breakdown. He was treated at a veterans hospital from April until October of 1954, when he was released. At the trial, one factual issue concerned plaintiff's mental state prior to the accident since this was relevant to his earning ability and the extent to which his condition was aggravated by the accident.

A witness called by plaintiff, one Bushnell, testified that he had seen plaintiff nearly every day from 1953 until the time of the accident. In later testimony the witness indicated that he meant he had seen plaintiff every day after plaintiff was released from the hospital in 1954. He stated that until plaintiff was involved in the accident "he was pretty well over his nervous condition" and "seemed to be getting along pretty well." Upon cross-examination defendant sought to inquire whether or not plaintiff, before April of 1954, had told the witness "he had a marked fear of the police and feared that the police were talking about him." Plaintiff's objection to the question was sustained. Thereupon, the judge excused the jury and the witness and admonished defendant's counsel that from such a reference to "police" the jury might infer improperly that plaintiff had a police record. Counsel conceded he was unable to establish that the witness had ever committed a felony. It further developed that counsel had not interviewed the witness but had learned of plaintiff's previous nervous breakdown and of certain symptoms plaintiff experienced during that illness and while under treatment at the hospital. Defendant's counsel asserted he had reviewed the Veterans' Administration records. He stated his intention to inquire of the witness whether plaintiff had ever told the witness that he felt "police were talking about him," and that "birds were swooping down on him." Counsel for plaintiff objected that these questions had prejudicial tendencies and should not be heard by the jury. The court agreed.

For purposes of preserving the record for appeal counsel stipulated in effect that the questions on these subjects would be asked out of the presence of the jury and the witness, but just as if they were present; and, after plaintiff objected to each question, the court could rule on the objection. Counsel for defendant then asked in substance whether during the period from the beginning of 1954, through the end of 1957,

plaintiff told Bushnell (1) he had the feeling the police were talking about him; (2) he was having difficulty holding a job; (3) he felt a need to tell lies; (4) dogs barked at him and birds swooped down on him whenever he walked down the street; and (5) did the witness know that plaintiff was a mental patient who suffered from delusions in which he imagined everyone and everything was plotting against him? The court sustained the objections of counsel which were principally on the ground that the questions would be prejudicial to plaintiff.

The objections were properly sustained. ▇ The chief purpose of cross-examination is to assist the trier of fact in determining the weight to be given to testimony elicited on direct examination. This purpose is accomplished through testing the credibility, knowledge and recollection of the witness. (*Sharp* v. *Hoffman,* 79 Cal. 404, 408 [21 P. 846].) ▇ The right of cross-examination is fundamental to due process of law, and, although scope of cross-examination in this state is limited to testimony received on direct examination (Code Civ. Proc., § 2048), there is a wide latitude allowed in testing credibility. (*Newman* v. *Los Angeles Transit Lines,* 120 Cal.App.2d 685, 691 [262 P.2d 95].) ▇ Whether the probative value of a question on cross-examination is outweighed by its prejudicial effect is a matter for the determination of the trial court, and its ruling will not be overturned absent a manifest abuse of discretion.

These inquiries pertained to symptoms of plaintiff's mental illness which had occurred prior to and during the time plaintiff was in the hospital. The witness had testified only concerning plaintiff's mental condition after he was released from the hospital. Therefore, the question as to whether there was a satisfactory recovery prior to the accident was partially obscured. Although defendant's counsel knew from the Veterans' Administration records that plaintiff had had such symptoms when in the hospital it was not shown that counsel had any basis for believing plaintiff had expressed these symptoms to the witness at any time or that he had any knowledge of them. From these facts it is apparent the trial court concluded that counsel was merely on a fishing expedition and that the harm which could result to the plaintiff outweighed any possible detriment to the defendant.

▇ In sustaining the objections to these questions the court made it clear that it was not foreclosing defendant from asking

questions covering the same or similar subject matter but couched in a different or less prejudicial form. We cannot say under these circumstances that the court abused the broad discretion vested in it in the conduct of a trial.

While cross-examining plaintiff defendant again inquired upon the same subject matter, and plaintiff objected on substantially the same grounds recited above. The court sustained the objections whereupon defendant made an offer of proof in substance that since January 1, 1954, plaintiff suffered from symptoms of a mental disease; that he had hallucinations the police were talking about him; that dogs barked at him; that birds swooped down on him when he walked down the street, and that he felt a need to tell lies; and that as a result of these symptoms he had been unable to obtain employment except for approximately three months in the summer of 1957.

The court sustained plaintiff's objections to the offer of proof. The offer of proof was material to the credibility of plaintiff and the witness Bushnell as well as to plaintiff's earning capacity before the accident and the aggravating effect of the accident upon plaintiff's preexisting nervous condition. ⸴

We find that the action of the trial court in sustaining plaintiff's objections was not prejudicial in light of the evidence in the record as a whole.

The substance of the testimony by plaintiff and Bushnell pertained to plaintiff's health after leaving the hospital in October 1954. The effect of the proof offered would have been to show, through Bushnell's apparent mistake as to the dates involved, that plaintiff was in the hospital at the time Bushnell testified that plaintiff was in good health. Since this fact had been explained on direct and redirect examination of Bushnell the adverse effect of this offer of proof upon his credibility would have been negligible, if any.

Evidence introduced by plaintiff indicated that his only employment after his hospitalization, other than infrequent part time labor, was as a janitor in Sequoia National Park in the summer of 1957. Upon cross-examination, prior to the offer of proof, plaintiff admitted that after his release from the hospital in 1954 he was unable to hold a job. To this extent the offer of proof was substantially cumulative of testimony already received by the trial court through the same witness and could therefore be properly rejected. (*Tossman* v. *Newman*, 37 Cal.2d 522, 526 [233 P.2d 1].)

On cross-examination, prior to the offer of proof, plaintiff was also asked if, from the beginning of his last hospitalization up to the time of trial, he had experienced hallucinations in which he imagined dogs were barking at him when he went down the street and birds were swooping at him. His answer was: "Absolutely not." Further, there was no evidence that plaintiff had seen a psychiatrist or a neurologist subsequent to the accident, and the testimony of two doctors, called by plaintiff and defendant respectively, indicated plaintiff had no abnormal mental state after the accident. This court will not speculate on what additional information could have been obtained by further examination on this point. From our review of the testimony on these issues it cannot be said that there was a reasonable probability that the facts sought to be elicited would have affected the result.

Defendant next contends the trial court erred in refusing to admit into evidence the Veterans' Administration records as to plaintiff's preexisting "nervous disorder."

 During the trial the plaintiff introduced a photocopy of a letter sent to plaintiff by the Veterans' Administration entitled "Award of Disability Compensation or Pension" which he had acquired from the claims portion of the Veterans' Administration file. Subsequently, defendant, who had caused the file to be brought to court through two subpoenas duces tecum, attempted to introduce the rest of the file. Plaintiff objected to the admission of the file on the ground that the information was privileged under a United States Code provision pertaining to Veterans' Administration hospitals. Defendant countered with the argument asserted on this appeal that the privilege was waived when part of the file was introduced during plaintiff's case in chief. The court ruled that the privilege was not waived by the introduction of the photocopy of the letter.

Although these records might have been admissible under state law they were properly excluded because of the federal law applicable in the instant case.

Section 3301 of 38 United States Code provides in part: "All files, records, reports, and other papers and documents pertaining to any claim under any of the laws administered by the Veterans' Administration shall be confidential and privileged, and no disclosure thereof shall be made except as follows: . . . (5) In any suit or other judicial proceeding when in the judgment of the administrator such disclosure is deemed necessary and proper."

Defendant could have sought to introduce the record into evidence through compliance with subdivision five of the pertinent federal code section and the regulations promulgated with respect thereto.[1] Although defendant subpoenaed the records there was no showing that he had secured the federal administrator's approval and, in fact, the transcript indicates the administrator did not approve. Plaintiff seasonably and properly objected. Under these circumstances we hold that the trial judge properly sustained the objection to the introduction of the remainder of the file. The fact that plaintiff introduced a document from the claims portion of the same file could have been made known in defendant's affidavit to the Veterans' Administration had he sought to proceed under the federal regulations to show the administrator that "disclosure of records [was] necessary and proper to prevent fraud or other injustice." (38 C.F.R. 1.511(c).)

Lastly, defendant claims the court erred in giving an instruction on the prima facie speed limit. ▮ The court instructed the jury: "The *prima facie* speed limit at the place where the accident occurred was 25 miles per hour. This fact is one to be considered by you, together with all of the other evidence, in determining whether or not the defendant was negligent. . . ."

Defendant does not question the propriety of the instruction but contends there was no proof that the accident occurred in a business or residential district where the speed limit would be 25 miles per hour, and therefore, the instruction offered by plaintiff was erroneously given by the court. This instruction was properly given in the instant case if there was proof of the facts specified in Vehicle Code sections 235 and 240 establishing the area as a business district.

---

[1] 38 Code of Federal Regulations 1.511(c) (1956) states: "Where copies of documents or records are requested by the process of any State or municipal court, . . . the process when presented must be accompanied either by authority from the claimant concerned to comply therewith or by an affidavit of the attorney of the party securing the same, setting forth the character of the pending suit, the purpose for which the documents or records sought are to be used as evidence, and, *if adversely to the claimant, information from which it may be determined whether the furnishing of the records sought is necessary to prevent the perpetration of fraud or other injustice.* . . . If it appears by the process or otherwise that the records are to be used adversely to the claimant, the averments contained in the affidavits shall be considered in connection with the facts shown by the claimant's file, and, *if such consideration shows the disclosure of the records is necessary and proper to prevent a fraud or other injustice, the records requested shall be produced.*" (Emphasis added.)

The only testimony on this issue was provided by a police officer who testified in substance that the buildings in the area along Eighth Street were "mostly business structures" in addition to hotels and apartment houses and that the area was built up all the way along the street. In response to counsel's question as to whether the area was a "business district," he replied "Strictly business."

The officer's testimony on this subject was received without objection. Defendant's counsel did not offer evidence to controvert it. Under these circumstances the officer's testimony provided a sufficient basis for the giving of the instruction.

The judgment is affirmed.

Burke, P. J., and Balthis, J., concurred.

[Civ. No. 6730. Fourth Dist. Apr. 12, 1962.]

HOWARD E. SHOEMAKER, Individually and as Guardian, etc., Plaintiffs and Appellants, v. STATE OF CALIFORNIA, Defendant and Appellant.

Schall, Nielsen & Boudreau, W. J. Schall, Leland C. Nielsen and Maurice V. Boudreau for Plaintiffs and Appellants.

Higgs, Fletcher & Mack, Henry Pitts Mack and Edward M. Wright for Defendant and Appellant.

COUGHLIN, J.—In this action to recover damages for personal injuries arising out of an automobile accident, after verdict and judgment in favor of the defendant [appellant and cross-respondent herein], the plaintiffs [respondents and cross-appellants herein], moved for a new trial; their motion was granted upon the ground, among others, that the evidence was insufficient to support the verdict; and the defendant appeals, contending that the evidence establishes the defense of contributory negligence as a matter of law. This contention raises the determinative issue on appeal.

In compliance with the governing rule, the evidence will be stated most favorably in support of the order granting the motion. (*Thomas* v. *Hunt Mfg. Corp.*, 42 Cal.2d 734, 736 [269 P.2d 12] ; *Brooks* v. *Metropolitan Life Ins. Co.*, 27 Cal.2d 305, 307 [163 P.2d 689].) On the morning of June 6, 1959, a head-on collision occurred between an automobile driven by the plaintiff, Lucille Shoemaker, and an automobile driven by Officer Carrington of the California Highway Patrol, an employee of the defendant. The locale of this collision was Murphy Canyon Road, a winding, north-south, two-lane, rural highway divided by a broken white line. Immediately prior to the accident the plaintiff automobile, a red Buick, was one of several automobiles proceeding southerly; was preceded by two automobiles; was followed by two other automobiles; was traveling at about 40 miles per hour; started to pass the automobile in front; its driver apparently noticed the oncoming defendant automobile, and started back to its right side of the highway, but before this maneuver was completed the accident occurred. The defendant automobile was proceeding northerly at a high rate of speed; came around a curve to its left; veered to the right onto the shoulder and close to the bank, a maneuver apparently made to avoid a southbound, neutral-colored automobile which then was 300 or 400 feet away in the north

lane;[1] its rear wheels started to drag sideways to the right; was brought back upon the paved portion of the roadway; crossed the northbound lane thereof in a northwesterly direction; and collided with the plaintiff automobile. At the time in question the driver of the defendant automobile, Officer Carrington, was on his way to the scene of an accident outside of his territory involving another officer; at one point was traveling at an estimated speed of 80 miles per hour; at the time of impact was going between 60 and 65 miles per hour; after the impact which demolished plaintiffs' automobile, traveled a distance of 480 feet before coming to a stop; did not see the red Buick when the neutral-colored car came into view, nor until he started traveling northwesterly across the highway; did not put on his brakes; and made very little effort to slow down, although his speed was retarded by the swerving movement of his automobile.

The evidence supports the conclusion that the neutral-colored car was the first of the two automobiles which preceded the plaintiff automobile; that when the plaintiff driver started to pass the car immediately in front of her the defendant automobile could not be seen nor heard; and that when the officer first saw the neutral-colored car the plaintiffs' automobile was 600 feet away.

The position of the two automobiles at the time of impact was a subject of substantial disagreement. The defendant contends that even though the plaintiffs' version of the position of their car at the time of impact be accepted, it was 2½ inches over the center of the highway into the northbound lane, i.e., the defendant's lane; that this fact appears without contradiction; that this evidence establishes the violation of an applicable statute and constitutes a prima facie showing of negligence; that there is no evidence in conflict with such showing; and, therefore, the proof establishes negligence upon the part of the plaintiff driver as a matter of law. The defendant also contends that this negligence, under the circumstances, proximately contributed to the accident as a matter of law. The plaintiffs contend that the evidence in question places their car only one-half inch in the defendant's lane of traffic; places the defendant's automobile 23 inches into the southbound lane, i.e., their lane; that the plaintiff driver was not negligent as a matter of law; and that, even if negligent,

---

[1]Plaintiffs argue that by reference to a map in evidence, this distance was 500 feet.

the evidence does not establish, as a matter of law, that her negligence proximately contributed to the collision.

As a result of injuries sustained in the accident, the plaintiff driver had no recollection of the events in question. This fact effects application of the presumption that she exercised due care. However, the plaintiffs produced the testimony which would support the conclusion that their car, at the time of impact, was 2½ inches over the center line. Relying on this circumstance, the defendant claims that the presumption of due care has been dispelled as a matter of law.

■ The driver of an automobile who is unable to testify by reason of loss of memory is entitled to the benefit of the presumption that he exercised ordinary care for his own concerns, except that if a "fact proved by uncontradicted testimony produced by the party seeking to invoke the presumption, 'under circumstances which afford no indication that the testimony is the product of mistake or inadvertence . . . is wholly irreconcilable with the presumption . . . the latter is dispelled and disappears from the case.' " (*Gigliotti* v. *Nunes,* 45 Cal.2d 85, 92-93 [286 P.2d 809].) The application of this rule requires a determination as to whether the evidence produced by the plaintiffs establishes without contradiction a fact or facts which are wholly irreconcilable with the presumption that the plaintiff driver exercised due care. In this regard, the defendant directs attention to certain provisions of the Vehicle Code as they existed at the time of the accident, i.e., section 530 [now § 21751], which provided:

"Except when a roadway has been divided into three traffic lanes, no vehicle shall be driven to the left side of the center line of a roadway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken. In every event the overtaking vehicle must return to the right-hand side of the roadway before coming within one hundred feet of any vehicle approaching from the opposite direction"; claims that the evidence produced by the plaintiffs shows that at the time of impact the plaintiff driver had not returned to her right side of the roadway and thus establishes a violation of the code section in question; contends that this violation raised a presumption of negligence which, until refuted by proof of justification or excuse, was con-

clusive evidence of negligence per se; cites the decisions in *Satterlee* v. *Orange Glenn School Dist.,* 29 Cal.2d 581, 588 [177 P.2d 279], *Jolley* v. *Clemens,* 28 Cal.App.2d 55, 68 [82 P.2d 51], and *Parker* v. *Auschwitz,* 7 Cal.App.2d 693, 696 [47 P.2d 341], in support of this position; further contends that the plaintiffs had the burden of proving justification or excuse, that they did not show such, and that the presumption of due care thus was dispelled; and concludes that the evidence of violation was uncontradicted proof that the plaintiff driver was negligent. ▮ The applicable rule is that the violation of a statute raises a presumption of negligence which may be overcome by evidence of justification or excuse (*Alarid* v. *Vanier,* 50 Cal.2d 617, 621 [327 P.2d 897]; *Gallup* v. *Sparks-Mundo Engineering Co.,* 43 Cal.2d 1, 9 [271 P.2d 34]; *Tossman* v. *Newman,* 37 Cal.2d 522, 525 [233 P.2d 1]) showing that the violator "did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law." (*Alarid* v. *Vanier, supra,* 50 Cal.2d 617, 624.) ▮ "In the application of this rule each violation of a statutory requirement must be considered in connection with the surrounding circumstances." (*Satterlee* v. *Orange Glenn School Dist., supra,* 29 Cal.2d 581, 590.) ▮ The error in defendant's argument lies in a restrictive application of the rules relied upon. The presumption of due care is dispelled only when the person relying thereon produces uncontradicted evidence of a fact or facts which are "wholly irreconcilable" with his exercise of such care. (*Brandelius* v. *City & County of San Francisco,* 47 Cal.2d 729, 736 [306 P.2d 432]; *Gigliotti* v. *Nunes, supra,* 45 Cal.2d 85, 93; *Lovett* v. *Hitchcock,* 192 Cal.App.2d 806, 809 [14 Cal.Rptr. 117].) The uncontradicted evidence to which defendant directs attention establishes only that the plaintiff driver was on the wrong side of the highway at the time of the accident and did not establish that she had not exercised due care under the rules heretofore considered. The violation of the statute upon which the defendant relies, i.e., former section 530 of the Vehicle Code, raises only a presumption of negligence which might be overcome by proof that under the circumstances the plaintiff driver had acted as a reasonably prudent person desiring to comply with the law. Evidence establishing that she had violated the law was proof only of one circumstance, the effect of which might be altered by other circumstances in determining whether due care had been exercised. Ordinarily, the issue thus presented is one

of fact. (*Satterlee* v. *Orange Glenn School Dist., supra,* 29 Cal.2d 581, 590.) Even disregarding the effect which the presumption of due care might have on the showing of justification and excuse, there is ample evidence in the instant case to sustain a finding that the violation in question did not constitute negligent conduct. The trial judge, in ruling upon the motion for a new trial, was entitled to conclude that at the time the plaintiff driver started to pass the car in front of her, the defendant could not be seen nor heard; that her efforts to return to her side of the highway comported with the exercise of due care; that the speed, failure to slow down, and unusual maneuvers of the defendant automobile precipitated a dangerous occasion not reasonably to be anticipated; and that, under the circumstances, the presumption of negligence attaching to the violation in question was rebutted. There is nothing in the case of *Gruss* v. *Coast Transport, Inc.,* 154 Cal.App.2d 85 [315 P.2d 339], cited by the defendant which conflicts with this determination.