Mayo Bishop *vs.* Paul R. Klein; Maria A. Fuller, administratrix, third-party defendant.

Norfolk. December 3, 1979. — April 1, 1980.

Present: Hennessey, C.J., Quirico, Wilkins, Liacos, & Abrams, JJ.

*Practice, Civil,* Discovery, Veterans' Administration records, Comment on exercise of privilege. *Evidence,* Veterans' Administration records. *Joint Tortfeasors,* Contribution.

A judge in a tort action did not abuse his discretion in denying the defendant's motion to compel production of the plaintiff's records on file at a Veterans' Administration hospital where the motion was not filed until four years after the commencement of the action and only after the case had been placed on the trial list and where the defendant failed to exhaust applicable regulatory procedures to obtain the records. [288-291]

A judge in a tort action did not err in prohibiting the defense counsel from making any reference to the plaintiff's refusal to authorize inspection of his records on file at a Veterans' Administration hospital where the documents were not excluded because of any exercise of privilege on the part of the plaintiff but because of the defendant's failure to seek official Veterans' Administration waiver of the privilege through the submission of a proper affidavit. [291-292]

In a tort action, arising from an automobile accident, there was no merit to the defendant's contention that the judge's dismissal of his motion to inspect the plaintiff's records on file at a Veterans' Administration hospital and the judge's denial of his right to comment on the lack of access to the records violated due process by depriving him of an adequate defense on the issue of damages where the defendant was not prejudiced in his attempt to show that the accident did not aggravate the plaintiff's prior back condition. [292]

In a tort action, the judge erred in applying G. L. c. 231B, § 4 (*b*), to extinguish a right to recover contribution from a codefendant who had entered into a settlement with the plaintiff where a judgment establishing joint and several liability had entered against the codefendants prior to the settlement. [292-295]

Tort. Writ in the Superior Court dated January 4, 1974.

Pretrial motions for discovery were heard by *Lynch,* J., and *Mason,* J.

The case was tried before *Vallely,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*John J. Thornton* for Paul R. Klein.

*Bronislaw A. Talutis* for Maria A. Fuller.

*Abner R. Sisson* for the plaintiff.

HENNESSEY, C.J.  This action arose out of a 1972 automobile accident in Medway, Massachusetts, involving a vehicle driven by the defendant Paul R. Klein and a vehicle driven by Leonard C. Fuller, in which the plaintiff Mayo Bishop was a passenger.  A Superior Court jury rendered a verdict for the plaintiff in the amount of $65,000, plus interest, against the defendants Klein and Maria A. Fuller, administratrix of the deceased Leonard C. Fuller.  Klein appealed,[1] urging that the judgment be vacated and a new trial on the issue of damages be ordered.  He argues that the trial judge's denial of his motions to compel production of the plaintiff's records on file at the West Roxbury Veterans' Administration Hospital (V.A. hospital) and his granting of the plaintiff's motion to prohibit defense counsel from making any reference to the plaintiff's refusal to authorize release of those medical records constitute an abuse of discretion and reversible error.  We disagree.  Accordingly, we affirm the jury's verdict for the plaintiff.

About eighteen years before the 1972 accident, the plaintiff injured his back in job-related incidents.  He underwent a spinal fusion operation at the V.A. hospital in 1960 but continued to have serious problems with his back.  At the

---

[1] The plaintiff's wife, Helen Bishop, was also a party in the trial below. She recovered a $17,024.67 judgment against each of the defendants, and Klein appealed.  A single justice of the Appeals Court dismissed that appeal when it became apparent from the defendant's brief that the appeal as to Helen Bishop was not being pursued.  We transferred the case here on our own motion.

trial, one factual question concerned the extent to which the accident aggravated this preexisting disability.

The defendant first sought access to the plaintiff's hospital records in June, 1974. At that time, the Superior Court granted the defendant's applications for orders to inspect and copy the plaintiff's records at various hospitals, including those at the V.A. hospital. On July 29, 1974, the chief attorney for the Boston regional office of the Veterans' Administration wrote to defense counsel, informing him that "Federal Law prohibit[ed] the Veterans Administration Hospital from complying with th[e] order" because the records sought were "confidential and privileged." The chief attorney explained that disclosure was prohibited unless the veteran gave his permission for the release of information or the provisions of 38 C.F.R. § 1.511 (1979) were satisfied, and he referred counsel to an Ohio case which discussed the confidential nature of the requested records.

No further action was taken by the defendant's attorney until January 25, 1978 — two days after the case was initially called for trial. At that time Klein's attorney filed a request, pursuant to Mass. R. Civ. P. 34, 365 Mass. 792 (1974), that the plaintiff produce his V.A. hospital records. In response thereto, on February 13, Bishop's attorney mailed to Klein's lawyer three pages from the hospital records relating to the postaccident diagnosis and treatment of Bishop's back injury.

On February 15, 1978, the case was again called and held for trial. On March 13, 1978, Klein's attorney filed a motion to compel production of Bishop's V.A. hospital records dating from 1960. On March 14, 1978, Klein's attorney filed a motion for continuance until such time as the plaintiff produced the documents. The motion to compel production of the documents was denied, and no further continuances were granted. Before the commencement of the trial on June 21, 1978, defense counsel filed two additional motions to compel production of the V.A. records, both of which were denied. At trial, the defendant asserted unsuc-

cessfully for a fourth time that he was entitled to copies of the plaintiff's V.A. records.

1. Where, as here, a judge has denied a party's request for pretrial discovery, the issue on appeal is whether that denial constituted an abuse of discretion. See 8 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 2215 (1970). Cf. *Partlow* v. *Hertz Corp.*, 370 Mass. 787, 790 (1976). It might have been helpful to the trial judge if the judges who heard and denied the defendant's motions to compel discovery had given reasons for their rulings. Cf. *Castellucci* v. *United States Fidelity & Guar. Co.*, 372 Mass. 288, 291 n.2 (1977). However, we see no reason to reverse their exercise of discretion in the instant case since justification for the rulings appears in the applicable law and in the record before us.

First of all, we observe that the defendant waited four years to raise the access issue and sought production of the records only after the case had been placed on the trial list. The Superior Court judges could well conclude that this four-year interval constituted undue delay, a wholly adequate basis for denying the defendant's motions. See *Foman* v. *Davis*, 371 U.S. 178, 182 (1962). See also *Castellucci* v. *United States Fidelity & Guar. Co.*, supra at 292-293. It follows that it was within the discretion of the judges to conclude that the defendant's discovery motions were untimely. Consequently, we cannot say that there was abuse of discretion in denying the defendant's motions to compel production of the records.

Examination of applicable Federal law reveals additional justification for the judges' rulings. Title 38 U.S.C. § 3301 (1976) provides that the records of the Veterans' Administration shall be deemed "confidential and privileged" except "(b) . . . (5) [i]n any suit or other judicial proceeding when in the judgment of the Administrator such disclosure is deemed necessary and proper." Regulations promulgated pursuant to that Federal code section elaborate on the procedure for the administrator's discretionary release of rec-

ords.[2]  In short, in private litigation in State courts an
adverse party seeking V.A. records must either secure the
veteran's authorization for release or submit an affidavit
describing the nature of the litigation and setting out why
the records are necessary to avoid a fraud or other injustice.
The decision as to ultimate disclosure, however, rests with
the administrator.[3]  38 C.F.R. § 1.511(c) (1979).

The defendant argues that he complied with regulatory
mandates.  He claims that, in seeking a court order under
Mass. R. Civ. P. 37 (a)(2), 365 Mass. 797 (1974), directing
the plaintiff to authorize inspection of his records, he was
proceeding under the first alternative of 38 C.F.R. § 1.511(c)
(1979), under which a veteran's consent is all that is necessary
before the administrator rules on disclosure of the records.  It
is true that one court, faced with a similar issue as to the
nature and extent of a plaintiff's disabilities existing prior to

---

[2] In pertinent part, 38 C.F.R. § 1.511(c) (1979) states:
"Where copies of documents or records are requested by the process of
any State or municipal court, . . . the process when presented must be ac-
companied either by authority from the claimant concerned to comply
therewith or by an affidavit of the attorney of the party securing the
same, setting forth the character of the pending suit, the purpose for
which the documents or records sought are to be used as evidence, and, if
adversely to the claimant, information from which it may be determined
whether the furnishing of the records sought is necessary to prevent the
perpetration of fraud or other injustice.  When the process received is ac-
companied by authorization of the claimant to comply therewith, if
otherwise it be proper under §§ 1.501 to 1.526, copies of the records re-
quested shall be furnished to the attorney for the party who caused the
process to be issued upon the payment of the prescribed fee.  If it appears
by the process or otherwise that the records are to be used adversely to the
claimant, the averments contained in the affidavit shall be considered in
connection with the facts shown by the claimant's file, and, if such con-
sideration shows the disclosure of the records is necessary and proper to
prevent a fraud or other injustice, the records requested shall be produced
. . . ."

[3] A different result obtains in Federal courts under 38 U.S.C. § 3301 (b)
(2) (1976), which makes V.A. records particularly subject to "process of a
United States court."  In Federal courts, "consent to release of [an ex-serv-
iceman's] V.A. records may be, under proper order of a court, directed
and influenced, subject to any claims of personal privilege the ex-service
man may make thereto." *Ross* v. *Cities Serv. Gas Co.*, 21 F.R.D. 34, 37
(W.D. Mo. 1957).

an automobile accident, directed a veteran-plaintiff to consent in writing to the inspection of his medical records in the possession of the Veterans' Administration. *Leusink* v. *O'Donnell*, 255 Wis. 627, 633 (1949). However, we are reluctant to order such consent absent a showing by a defendant that he has exhausted both administrative alternatives and is still unable to acquire the records. Cf. *Kassow* v. *Robertson*, 143 N.E.2d 926, 927-928 (Ohio C.P. 1957). In the present case, there is no evidence that the defendant sought to gain the administrator's approval by submitting the requisite affidavit, despite the fact that the 1974 letter from the V.A. attorney alerted the defendant to the particular problems involved with regard to inspection of V.A. records. Accordingly, we conclude that the defendant failed to exhaust applicable regulatory procedures and may not now circumvent those requirements by means of the discovery rules. See *Payette* v. *Sterle*, 202 Cal. App. 2d 372, 377-378 (1962); *Penn Mut. Life Ins. Co.* v. *Ireton*, 57 Idaho 466, 473-475 (1937); *Turners, Inc.* v. *Klaus*, 341 S.W.2d 182, 185 (Tex. Civ. App. 1960).

The defendant further contends that whatever statutory privilege may have attached to the material sought in his motions was waived when, pursuant to the defendant's request for documents, the plaintiff released three pages related to his postaccident physical examination at the V.A. hospital and failed to object to disclosure of other documents on the ground of privilege. We disagree. The plaintiff's failure to follow the requirement of Mass. R. Civ. P. 34, that a party objecting to a production request specify the items or categories objected to and state reasons for his objections, is irrelevant in the circumstances of this case. If the defendant could not properly proceed to compel the plaintiff's authorization for release of the records under rules 34 and 37 until he had exhausted regulatory procedures, the plaintiff's failure to itemize specific objections to the production request will not be held against him. Even assuming the privilege is the plaintiff's to waive — a matter which is not entirely free from doubt, see *McGlothan* v.

*Pennsylvania R.,* 170 F.2d 121, 129-130 (3d Cir. 1948); 8 J. Wigmore, Evidence § 2377 (McNaughton rev. 1961) — the defendant has not demonstrated that the three pages constituted a significant part of the privileged matter so that the plaintiff's voluntary disclosure can be termed a waiver. See *Payette* v. *Sterle, supra* at 377-378 (plaintiff's introduction of one letter from his V.A. file with respect to disability benefits not waiver of privilege to exclude complete V.A. file); Proposed Mass. R. Evidence 510 (1979).

2. The defendant also submits that the court erred in allowing the plaintiff's motion to prohibit defense counsel from making any reference to Bishop's refusal to authorize inspection of his V.A. hospital records. He relies on Massachusetts cases which permit a party in a civil case to comment upon the exercise of a privilege by his adversary with the view of having the jury infer that the privilege was exercised to prevent the introduction of prejudicial evidence. See, e.g., *Carey* v. *Zayre of Beverly, Inc.,* 367 Mass. 125, 130 n.4 (1975); *Kaye* v. *Newhall,* 356 Mass. 300 (1969); *Phillips* v. *Chase,* 201 Mass. 444, 450 (1909). There was no error.

First, we cannot be sure that the V.A. records were excluded on the ground of privilege. As we stated above, the defendant's four-year delay in requesting the documents was sufficiently untimely to warrant denial of his motion. But even were we to assume that the motion for discovery was denied solely on the ground of the documents' privileged nature, argument of unfavorable inferences before the jury was inappropriate. The documents were not excluded because of any exercise of privilege on the part of the plaintiff but rather because of the defendant's failure to seek official V.A. waiver of the privilege through the submission of a proper affidavit. Thus, to allow the defendant to question the plaintiff about his V.A. records or to comment on the withholding of such evidence would permit the defendant to profit from his own failure to follow regulatory procedures by shifting any negative inferences to the plaintiff. However, we note that had the V.A. administrator refused

disclosure, after the defendant had moved with diligence and complied with the regulatory procedures applicable when a veteran refuses to consent to the release of his records, the defendant undoubtedly should have been permitted to argue unfavorable inferences from the plaintiff's failure to cooperate. On the other hand, no such argument should be permitted in the unlikely situation where a veteran had authorized disclosure but the administrator in his discretion still refused release.

3. Finally, the defendant argues that the trial judge's denial of his discovery motions and the judge's denial of his right to comment on the lack of access to the V.A. records violated due process by depriving him of an adequate defense on the issue of damages. This contention is without merit. In allowing the plaintiff's motion to limit the defendant's right to comment, the judge emphasized that the defendant had a right to inquire about the plaintiff's previous physical condition. Indeed, the plaintiff's preexisting back condition, his treatments, and his disabilities were explored in great detail during the trial. Consequently, the defendant was not prejudiced in his attempt to show that the accident did not aggravate the plaintiff's prior back condition.

4. We turn now to consider the correctness of the Superior Court judge's dismissal of the third-party complaint. After judgments were entered in favor of the plaintiff and his wife, the defendant Maria A. Fuller, as administratrix of her husband's estate, offered the full value of her husband's insurance policy ($10,000) in settlement. This offer was accepted by the plaintiffs, who then executed releases and filed an agreement for judgment. The defendant Klein's offer of settlement was rejected. Thereafter, Fuller brought a motion to dismiss the third-party complaint on the ground that G. L. c. 231B, § 4,[4] inserted by St. 1962, c. 730, § 1,

---

[4] The statute provides: "When a release or covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury: (a) It shall not discharge any of the other tortfeasors from liability for the injury unless its terms so provide; but it

barred any action for contribution[5] since she had settled in good faith with the plaintiffs. Matters outside the pleadings having been presented, the judge treated the motion as one for summary judgment under the provisions of Mass. R. Civ. P. 12 (b), 365 Mass. 754 (1974). The judge found that (1) the only asset of the estate was the $10,000 insurance policy which was paid for the releases and that (2) no other assets being available to satisfy an execution of judgment, the settlement between the original plaintiffs and the defendant/third-party defendant was made in good faith. Accordingly, the judge allowed the motion to dismiss. We conclude that there was error in the judge's application of G. L. c. 231B, § 4 (*b*), to extinguish a right to recover contribution where a judgment establishing joint and several liability had already entered against the codefendants.

Our conclusion that § 4 (*b*) does not nullify a preexisting judgment is supported by the statute itself, which states: "The judgment of the court in determining the liability of the several defendants to the claimant for an injury shall be binding as among such defendants in determining their right to contribution." G. L. c. 231B, § 3 (*f*). It seems to us that this language clearly establishes that entry of judgment against two or more joint tortfeasors fixes a defendant's right to contribution for the amount paid in excess of his equitable share and extinguishes any right to settle and thereby discharge liability for contribution.[6]

---

shall reduce the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and (*b*) It shall discharge the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor."

[5] A right of contribution is created by G. L. c. 231B, § 1 (*a*), which states: "Except as otherwise provided in this chapter, where two or more persons become jointly liable in tort for the same injury to persons or property, there shall be a right of contribution among them even though judgment has not been recovered against all or any of them."

[6] The judge's finding in the present case that the estate possessed no assets beyond the $10,000 insurance policy is irrelevant to an application to § 4 (*b*). A joint tortfeasor retains his right of contribution, as defined by the statute, regardless of the success or failure of a subsequent levy of execution.

This interpretation is further supported by an examination of the policies undergirding the statute. In *Hayon* v. *Coca Cola Bottling Co.*, 375 Mass. 644, 648 (1978), we examined the purpose of G. L. c. 231B, which creates and defines the right of contribution, and stated: "It is plain that the evil to be remedied was the unfairness of allowing a disproportionate share of the plaintiff's recovery to be borne by one of several joint tortfeasors, and the object to be accomplished was a more equitable distribution of that burden among those liable in tort for the same injury."

One problem with recognizing this right of contribution among joint tortfeasors, however, was that it discouraged settlements. The National Conference of Commissioners on Uniform State Laws, which together with the American Law Institute drafted the Uniform Contribution Among Tortfeasors Act after which G. L. c. 231B was modeled, stated the problem and solution as follows: "No defendant wants to settle when he remains open to contribution in an uncertain amount, to be determined on the basis of a judgment against another in a suit to which he will not be a party. . . . Accordingly [§ 4 (b)] provides that the release in good faith discharges the tortfeasor outright from all liability for contribution." 12 U.L.A., § 4, at 99-100 (Master ed. 1975). We conclude then that G. L. c. 231B, § 4 (b), was drafted to encourage settlements in multiple party tort actions by clearly delineating the effect settlement will have on collateral rights and liabilities in future litigation.

However, to apply the contribution bar of § 4 (b) to a settlement reached after judgment has been entered contradicts the general purpose of the statute as recognized in *Hayon* v. *Coca Cola Bottling Co.*, *supra* at 648. Where, as here, a wrongdoer has settled for less than his pro rata share, such a construction would, in essence, constitute a reversion to the common law view that an injured party may apportion the loss among joint tortfeasors as he sees fit. See generally, W. Prosser, Torts § 50 (4th ed. 1971). We can resolve this

apparent conflict of policies by limiting the preclusive effects of § 4 (*b*) to prejudgment settlements.[7]

5. We affirm the judgment entered by the Superior Court judge for the plaintiff Mayo Bishop against the defendant Paul R. Klein. The judge's dismissal of Klein's third-party action against Maria Fuller, as administratrix of the deceased Leonard C. Fuller, is to be vacated, and the case as to the third-party complaint is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

[7] The fact that § 4 includes, among the types of settlements that discharge contribution liability, a covenant not to enforce judgment does not require that the section be applied to settlements made after the entry of judgment. Such an agreement has been described as one "entered into after suit is commenced and *before* judgment" (emphasis supplied). *Whittlesea* v. *Farmer,* 86 Nev. 347, 350 (1970).