Muse, J.
Mary Hemeon, William Hemeon, Timothy MacDonald and Beth MacDonald (hereinafter, collectively known as “defendants”) bring this motion to dismiss Childlife, Inc.’s d/b/a Child Life Play Special Ties’ (“Childlife”) third-party complaint seeking contribution. Childlife opposes the motion and further seeks this Court to set aside the court’s prior determination that the settlement between the plaintiffs and the defendants was made in good faith pursuant to Massachusetts General Laws eh. 23 IB, §4(b). For the reasons set forth below, defendant’s Motion to Dismiss is ALLOWED and Childlife’s request to set aside the good faith determination is DENIED.
BACKGROUND
This case arises out of an accident which occurred on September 16, 1998, at which time the minor plaintiff, Liane Jokl (“Liane”), was injured while riding a children’s toy called the “Space Trolley” (“Trolley”).[4] The Trolley was manufactured by Childlife. This device was purchased at a yard sale by the defendant, Beth MacDonald and installed by her husband, Timothy MacDonald, at their residence in Gloucester, MA.[5] Liane was injured and caused to become a quadriplegic when the Trolley she was riding caused her to fall to the ground approximately eight to ten feet below.[6]
The plaintiff originally sought damages against the moving parties for the injuries suffered by Liane and loss of consortium claims by her parents. Prior to filing suit, the plaintiffs and defendants agreed to settle their claims for $500,000.00. This amount represented the total homeowners policy limit for the subject property covering this loss.
The plaintiffs sought approval of the settlement and filed a Petition for Approval of a Settlement Agreement pursuant to G.L.c. 231, §140C 1/2 and for Approval of a Good Faith Settlement Agreement pursuant to G.L.c. 231B, §4(b). On October 25, 2001, a hearing was held before this court (Merrick, J.) explaining in detail the familial relationship between the parties and the reasons for the settlement.[7] On countless occasions, Childlife was notified of the hearing and its presence was specifically requested by both parties to the settlement.[8] Childlife failed to respond and ultimately never appeared at the hearing.
After a full hearing and with full knowledge by the plaintiffs of the finality of their decision, the court agreed that the settlement was in the best interest of Liane and that it was reached in good faith. The court thereafter approved the settlement and the actions against the defendants were dismissed.
On September 14, 2001, the plaintiffs filed this current action against Childlife. Thereafter, on December 28, 2001, Childlife filed a Third-Party Complaint against the defendants for contribution. Defendants have filed a motion to dismiss based upon G.L. c. 23 IB, §4(b) which provides that a good faith settlement discharges “the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.” Childlife opposes this motion and further seeks this Court to set aside the finding that the settlement was made in good faith.
DISCUSSION
I. Good Faith Determination
G.L.c. 23IB, §4(b) states:
When a release or covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injuiy: It shall discharge the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.
The purpose of the statute is to encourage settlement, and these settlements should be routinely approved without extended hearings if the purpose of the statute is to be served. Noyes v. Raymond, 28 Mass.App.Ct. 186 (1990).
As a preliminary matter, on October 25, 2001, an Approval of Settlement hearing was conducted to determine whether the settlement between Liane and the defendants was made in good faith. This hearing was *446 specifically requested by counsel for both parties as it was apparent that Childlife would seek contribution from the defendants in the later suit against them. In fact, that very issue was discussed in detail by the court and the parties. Notwithstanding, the court conducted a thorough investigation into the terms and circumstances surrounding the settlement and thereafter determined that the settlement was in the best interest of Liane and was made in good faith.[9] There is no reason to upset that determination.
Childlife relies on Bishop v. Klein to support its contention that this settlement should be set aside. 402 N.E.2d 1365 (Mass. 1980). In Bishop, the plaintiff, a passenger in a motor vehicle being driven by Leonard Fuller, was injured when the vehicle was involved in an accident with a vehicle being driven by Paul Klein. Id. at 1367. The case went to trial and a verdict was returned in Bishop’s favor for $65,000.00. Id. Following the verdict, Maria Fuller,[10] offered the full $10,000.00 of her husband’s insurance policy in settlement, which was accepted by the plaintiff. Id. at 1370. The Supreme Judicial Court vacated the lower court’s dismissal of the third-party complaint against Fuller stating, “to apply the contribution bar of §4(b) to a settlement reached after judgment has been entered contradicts the purpose of the statute.” Id. In the present case, the settlement was entered into prior to any determination of any liability.
Childlife also relies on Paonessa v. Cedarapids, Inc., to support its argument that the settlement was made in bad faith. 13 Mass. L. Rptr. 602, 2001 WL 1334726 (Mass.Super.). In Paonessa, the plaintiff was employed by his brother’s company and suffered a head injury while on the job as a result of alleged negligence. Id. at 1. The plaintiff ultimately settled with his employer for what was a present value of $44,000.00 while seeking $1.5 million in damages from the manufacturer of the machine which injured him. Id. The plaintiffs only expressed reason for settling with his employer was “to prevent a family squabble” even though he understood the case against his brother was worth more than the settlement amount. Id. at 2. The court ultimately concluded that the settlement was dictated by the plaintiffs desire to prevent a family conflict rather than a good-faith consideration of the relevant liability of all parties. Id. This case is clearly distinguishable. Here, the plaintiffs’ approval of the settlement was primarily motivated by their intention to get Liane the rehabilitation she needed as quickly as possible. The concern for avoiding family conflict was, at best, tangential.
Childlife requests that a second hearing be conducted as to the issue of good faith. However, the party opposing the settlement has the burden of proving a lack of good faith. Noyes v. Raymond, 28 Mass.App.Ct. 186, 191 (1990). This Court finds no support for Childlife’s claim of possible bad faith. Based upon the facts and circumstances surrounding the settlement which were before the court on October 25, 2001, the basis for an extended hearing on the issue of good faith has not been made. Given the severity of the injuries to Liane, her need for rehabilitation as quickly as possible and her family’s inability to pay for the extensive and expensive costs of rehabilitation, the immediate money offered by the settlement, of which no attorneys fees or expenses would be deducted, would provide necessary funds to Liane to give her the best opportunity to recover from this tragic accident.[11] It is uncontested that the quicker an individual begins rehabilitation, the higher the probability for a better result.
As mentioned earlier, Childlife contends that the settlement was not made in good faith because the parties are related and because the money paid by the defendants is small in comparison to their potential liability judgment. Given the facts of this case, it is not unreasonable to think that a jury may not find any liability on the part of the Hemeons, the owners of the property where the incident occurred and the holders of the insurance policy from which the settlement was derived. Moreover, the fact that a settlement amount if low in comparison to the plaintiffs estimate of their own damages, by itself, is not material. Noyes, supra, at 190. Furthermore, there is evidence that the plaintiffs mother approved the settlement.[12] In these circumstances the defendants’ settlement with the plaintiffs for the full amount of their homeowners insurance policy does not indicate any type of bad faith.[13]
This Court finds that there was ample evidence to support a good faith finding and will not set aside the good faith determination. This Court places great weight on Liane’s mother’s testimony that the settlement is in the best interest of Liane. In addition, the transcript unequivocally reveals the mother’s dedication to providing the best services for her daughter as well as planning for Liane’s future. Further, the settlement amount is not insubstantial, and provides necessary funds for Liane’s present and future rehabilitation, as well as for her educational goals.
A. Childlife’s Failure to Intervene
Pursuant to Mass.R.Civ.P. Rule 24(a):
Upon timely application anyone shall be permitted to intervene in an action:... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant’s interest is adequately represented by existing parties.
As stated earlier, Childlife was given numerous opportunities to object to this settlement prior to or at the hearing. In fact, they were (1) given copies of the proposed settlement: (2) notified in advance of the Approval of Settlement hearing (“hearing”) of the plaintiffs intent to file suit against it; (3) specifically *447 requested to attend the hearing; and (4) asked for dates that were convenient for it to attend so a hearing could be scheduled.[14] Given these many opportunities, it failed to respond and ultimately failed to appear at the hearing on October 25, 2001.
Clearly, with advance knowledge of the lawsuit to be filed, Childlife had the right and opportunity to intervene pursuant to Rule 24. In fact, Childlife conceded at the recent hearing before this Court on the current motions that they were aware of the opportunity to challenge the settlement but failed to do so.
There are limited circumstances in which a non-party has been permitted to appeal from a judgment, despite its failure to intervene, for example, where a nonparty has a direct, immediate and substantial interest that has been prejudiced by the judgment, and has participated in the underlying proceedings to such an extent that the nonparty has intervened “in fact.” Corbett v. Related Companies Northeast, Inc., 424 Mass. 714 (1997), citing Binker v. State, 977 F.2d 738, 745 (3d.Cir. 1992) (nonparties are permitted to appeal where the equities favor hearing the appeal, where the nonparties participated in the settlement agreement and where the nonparties have a stake in its proceeds discernable from the record). However, those circumstances are rare, and merely commenting on, or objecting to, a proposed settlement, generally is insufficient to justify an appeal by a nonparty. Corbett, supra, at 719, citing Marino v. Ortiz, 108 S.Ct. 586, 587-88 (1988). Even where a nonparty has a direct and substantial interest in the fairness of the settlement amounts, that alone does not give standing to the nonparty to appeal the judgment. Id. at 719. Here, Childlife never participated in the settlement and therefore cannot now appeal the court’s finding on the basis of being a nonparty with interest.
Therefore, this Court finds that Childlife waived its opportunity to be heard with regards to the settlement by not intervening prior to the hearing date.
III. Childlife’s Request to Conduct Limited Discovery
Childlife also requests an opportunity to conduct limited discovery to determine the reasonableness of the settlement on account that the defendants may have had more assets available for settlement purposes, thereby potentially creating bad faith. This request is founded on mere conjecture and surmise and is a product of wishful thinking. This Court finds that such a request is unnecessary and it is therefore denied.
In this state, as well as many others, a party’s assets are easily ascertainable. An asset check can be conducted in a myriad of ways, including, but not limited to a search at the Registry of Deeds for any property-held by the defendants. It therefore is unnecessary to reopen discovery for the purpose of obtaining information which can be retrieved with relative ease from outside sources.
This hope for new information is too attenuated to warrant the requested reopening of discovery and further delay of the settlement. There should not be a mini-discovery on the issue of good faith settlement after such a determination was made previously and consistent with the evidence presented. Nor is such mini-discovery consistent with G.L.c. 231B, §4.
This Court agrees with the prior court’s finding that the plaintiffs and defendants entered into the settlement in good faith, and therefore, pursuant to G.L.c. 23 IB, §4(b), defendants are discharged from all liability for contribution to any other tortfeasor. Moreover, this Court is satisfied that the administrative record fails to support Childlife’s contention of lack of good faith. The court’s previous evaluation and ruling of the settlement is a sound one setting forth its reasoning in a full and clear discussion.
ORDER
For the foregoing reasons, it is hereby ORDERED that Third-Party Defendants’ motion to dismiss is ALLOWED and the Third-Party Plaintiffs opposition to the motion to dismiss and request to set aside the settlement between the plaintiffs and the defendants is DENIED.

The “Space Trolley” is a product that allows its occupants) to glide above the ground while sitting In a bosun’s seat which runs along steel cables that are anchored to a stationary base and tied off with a yellow safety rope.

Beth and Timothy MacDonald were the maternal aunt and uncle of Liane. At the time of this accident, the MacDonalds were renting the home from Mary Hemeon, Liane’s grandmother, and William Hemeon, Liane’s uncle.

Liane suffered a fracture of the spine.

The court inquired of the plaintiffs their knowledge of the finality of the settlement and whether they felt it was in the best interest of Liane to settle their claims.

Approval of Settlement transcript indicates that the parties offered to postpone the hearing to a date chosen by Childlife, to ensure their appearance. In addition, Childlife was provided with a copy of the terms of the settlement and the plaintiffs’ intention to file suit against Childlife following the settlement.

The transcript, consisting of seventy pages, is replete with inquiries by the court and counsel as to the best interest of Liane and the reasons for entering into the settlement.

As administratrix of her husband’s insurance policy.

From the $500,000.00 settlement, $425,000.00 would be put in Trust for the sole benefit of Liane and $75,000.00 would be deposited into an account to be used for financing the products liability suit against Childlife.

She is also the Trustee for the Trust established for the sole benefit of Liane.

Bad faith includes collusion, fraud, dishonesty and other wrongful conduct. Noyes v. Raymond, 28 Mass.App.Ct. 186, 189-90 (1990).

Childlife admits to having received this information.