JOSEPH NOYES & another[1] *vs.* JANE E. RAYMOND & another,[2] executors.[3]

No. 88-P-1220.

Barnstable. October 18, 1989. - January 8, 1990.

Present: WARNER, C.J., KASS & FINE, JJ.

*Negligence,* Motor vehicle, Comparative. *Joint Tortfeasors. Contribution. Evidence,* Burden of going forward, Settlement offer. *Practice, Civil,* Judgment notwithstanding verdict, New trial, Instructions to jury.

In a tort action arising from an automobile accident in which a wife sustained injuries when a vehicle being operated by her husband collided with a vehicle operated by a third party, the husband was entitled, after having reached a settlement with his wife, to be discharged from all liability for contribution to the third party under G. L. c. 231B, § 4, where the fact that the amount of the settlement was low in comparison to the wife's estimate of her own damages, by itself, was not material, and where the third party made no suggestion that the settlement was collusive or otherwise wrongful. [188-191]

In a tort action arising from an automobile accident in which a wife sustained injuries when a vehicle being operated by her husband collided with a vehicle operated by a third party and in which the husband was found to be contributorily negligent, the judge correctly denied the husband's motion for a judgment notwithstanding the verdict, or in the alternative, for a new trial, where there was ample evidence presented at trial to support a finding of some causal negligence on the part of the husband; moreover, the judge's instruction to the jury based upon G. L. c. 90, § 17, making it prima facie evidence of operation at an unreasonable rate of speed to exceed a speed of thirty miles per hour for a distance of more than one-eighth of a mile inside a thickly settled or business district, was in the circumstances proper. [192-194]

CIVIL ACTION commenced in the Superior Court Department on July 18, 1984.

---

[1] Rita Noyes.

[2] Plymouth Home National Bank.

[3] Of the estate of Elmer E. Raymond. Raymond's death prior to trial was unrelated to the accident.

The case was tried before *George C. Keady, Jr.*, J.

*Richard K. Latimer* for the plaintiffs.

*Peter G. Collias* for the defendants.

FINE, J. Joseph Noyes was operating a vehicle on Route 6, the Bourne Scenic Highway, with his wife, Rita Noyes, in the passenger seat when they were struck at the intersection with Herring Pond Road by a pickup truck operated by Elmer Raymond. Rita and Joseph brought this action against Raymond for the injuries they sustained as a result of the accident. In his answer, Raymond denied that he was negligent. He alleged that, if he should nevertheless be found negligent, he was entitled to the benefit of the comparative negligence statute, G. L. c. 231, § 85, as Joseph was also negligent. And, finally, in a counterclaim, he sought contribution from Joseph under G. L. c. 231B, § 1(*a*), towards any damages awarded to Rita.

When the case was called for trial, Joseph informed the court that he had reached a settlement with Rita for $10,000, and, relying on G. L. c. 231B, § 4, he presented a motion, entitled "motion for summary judgment," seeking a separate judgment of dismissal. None of the parties filed affidavits, but the following facts relating to the settlement were established at a hearing immediately convened before the trial judge. Joseph carried insurance with the Liberty Mutual Insurance Company with coverage in the amount of $50,000; before making the $10,000 offer on Joseph's behalf, Liberty Mutual made other offers to Rita which were lower and were rejected; Raymond had insurance coverage in the amount of $250,000; his insurer's last offer to Rita was approximately $17,000; Rita had made a $150,000 demand against the defendant based upon her attorney's evaluation of her damages; and Rita's attorney believed that the case against Joseph for liability was weak.

The judge determined that there was a material issue of fact on the question whether the settlement was made in good faith and denied the motion. The case then went to trial before a jury which, in answers to special questions, found that Raymond was 65% negligent and Joseph was 35% neg-

ligent. They found Rita's damages to be $100,000 and Jo-seph's damages to be $90,000. Judgment entered based upon the verdicts, but each damage award was reduced by $2,000, representing personal injury protection benefits, and Joseph's award was reduced further in accordance with the finding that he was contributorily negligent. Judgment also entered against Joseph on the counterclaim for contribution. Joseph filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, but the motion was denied.

On appeal, Joseph contends, and we agree, that he should have been discharged as defendant in counterclaim before trial on the basis of G. L. c. 231B, § 4. He also contends that the finding of some causal negligence on his part was based upon insufficient evidence and a faulty jury instruction. We do not agree with that contention.

1. *The "good faith" settlement under G. L. c. 231B, § 4.* We must decide first whether, on the basis of the limited facts about the settlement which were before the judge in advance of trial, Joseph was entitled to be discharged from all liability for contribution to Raymond. General Laws c. 231B, § 4, as inserted by St. 1962, c. 730, § 1, states in part: "When a release or covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury: . . . (b) It shall discharge the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor."[4]

The statute neither defines "good faith" nor describes the burden of the party seeking to be discharged on the basis of a settlement. Although we would have expected those partic-ular questions to have arisen with some frequency in tort liti-gation, to our knowledge, no appellate decision in this Com-monwealth has addressed them. The purposes behind the statute have been discussed, however, and those discussions

---

[4]The remainder of the statute provides: (a) "It shall not discharge any of the other tortfeasors from liability for the injury unless its terms so provide; but it shall reduce the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater[.]"

are of some guidance to us in resolving this appeal. Our courts have stated that the statute was intended to encourage settlements. See *Bishop* v. *Klein*, 380 Mass. 285, 293-294 (1980); *Robertson* v. *McCarte*, 13 Mass. App. Ct. 441, 444 (1982). The reference in G. L. c. 231, § 4, to "good faith" also implies a concern on the part of the Legislature with the avoidance of collusion, fraud, and other wrongful conduct. Compare *Hartford Acc. & Indem. Co.* v. *Millis Roofing & Sheet Metal, Inc.*, 11 Mass. App. Ct. 998, 999-1000 (1981), citing *Spiegel* v. *Beacon Participations, Inc.*, 297 Mass. 398, 416-417 (1937). The history of the statute points to the same two legislative goals. General Laws c. 231B, adopted in Massachusetts in 1962, is based upon the 1955 version of the Uniform Contribution Among Tortfeasors Act, 12 U.L.A. 63 (Master ed. 1975). Section 4 of the Act was substantially changed from the 1939 version.[5] According to the commissioners who drafted the 1955 version, there were two purposes behind the changes. The first was to prevent collusion amongst the settling parties. The second was to encourage settlements. *Id.* at 99.[6] For a discussion of the legislative background, see also *Bishop* v. *Klein*, 380 Mass. at 294.

The goal of encouraging settlements may be achieved only to the extent that motions for discharge based upon settlements are routinely allowed, with extended hearings on the question of good faith the exception. If it were otherwise, a

---

[5]Section 4(*b*) was added in place of § 5 of the 1939 Act, which had provided that a settlement with a tortfeasor would not release that tortfeasor from liability for contribution unless the parties expressly provided for a reduction "to the extent of the pro rata share of the released tortfeasor" of the injured person's recoverable damages. See Commissioners' Comment to the Uniform Contribution Among Tortfeasors Act, *supra* at 99. The 1939 version remains in effect in eight States.

[6]Under § 5 of the 1939 Act, plaintiffs were generally unwilling to accept settlements which contained the provision reducing damages "to the extent of the pro rata share of the released tortfeasor" as they had no way of knowing how much they were giving up. Defendants, on the other hand, were generally unwilling to agree to settlements without the provision, as they would remain subject to contribution in uncertain amounts. According to the commissioners, to encourage settlements was more important than "to make an attempt of doubtful effectiveness to prevent discrimination by plaintiffs, or collusion in the suit." *Id.* at 100.

party seeking to avoid trial by settling a claim could rarely achieve that objective; either the issue of good faith would be the subject of a full trial or, as happened in this case, a defendant who settles with a plaintiff may, nevertheless, be forced to stand trial on the merits of the tort claim. Faced with such prospects, a defendant would have little incentive to enter into a settlement.

We must first determine what lack of good faith means in the context of G. L. c. 231B, § 4. It certainly includes collusion, fraud, dishonesty, and other wrongful conduct. In the present case, the judge denied Joseph's motion because the amount of the settlement was small in proportion to Rita's claim. The fact that the amount of a settlement is low in comparison to the plaintiff's estimate of her own damages, by itself, is, however, not material. A relatively low settlement might well reflect uncertainty whether the settling party would be found liable, uncertainty whether the damages would be proved, or the general unpredictability of juries on both liability and damage issues. Even where a claimant receives nothing in exchange for releasing a defendant, the statute may preclude a claim by a codefendant for contribution. See *Grace* v. *Buckley*, 13 Mass. App. Ct. 1081, 1082 (1982). A rule whereby a determination of lack of good faith could be based only on the amount of a settlement would "require trial courts to apply an unworkable standard to every settlement. It [would] clog our trial courts with unnecessary hearings, discourage the settlement of legitimate claims, and severely strain the resources of the parties and the trial and appellate courts of this state." *Tech-Bilt, Inc.* v. *Woodward-Clyde & Assocs.*, 38 Cal. 3d 488, 502 (1985) (Bird, C.J., dissenting).[7]

---

[7]The majority of the California Supreme Court in *Tech-Bilt* adopted a definition of good faith which requires the court to make a determination, based on a multiplicity of factors, "whether the amount of the settlement is within the reasonable range of the settling tortfeasor's proportional share of comparative liability for the plaintiff's injuries." *Id.* at 499. We note that California's law relating to contribution differs from that of Massachusetts. Unlike California, Massachusetts has not adopted apportionment

Second, we must decide which party has the burden of producing evidence relative to the good faith of the settling parties. The party relying upon a settlement in seeking to be discharged certainly has the initial burden of establishing that a settlement has been agreed upon and its nature and terms. If the nonsettling party raises a legitimate issue of lack of good faith, he would be entitled to an evidentiary hearing on the question of good faith. Consistent with the statute's policy of encouraging settlements, however, the burden of coming forward with some showing of lack of good faith ought to rest, we think, with those opposing the discharge.[8] Compare *Home Ins. Co.* v. *Advance Mach. Co.*, 443 So. 2d 165, 169 (Fla. Dist. Ct. App. 1983); *Barreto* v. *Waukegan*, 133 Ill. App. 3d 119, 128 (1985). Only with such a rule will motions for discharge based upon G. L. c. 231B, § 4(*b*), be routinely allowed, with litigation over the issue of good faith taking place only in rare instances.

There was no suggestion in this case that the settlement was collusive or otherwise wrongful. No inference of collusion arose merely from the fact that Rita and Joseph are husband and wife, as the offer was actually made by the insurer who would bear the responsibility for satisfying the terms of the settlement. Moreover, there was some evidence before the judge that the settlement was fair and reasonable. Joseph's liability appeared questionable, at least to Rita's attorney. And, considering that Joseph's maximum liability for contribution after trial would have been 50% of the damages awarded to Rita, his offer was in the same range as the $17,000 settlement offer made by Raymond's insurer.

There was, thus, no proper basis for denying Joseph (or in reality his insurer) the right to "buy his peace" and be free of liability for contribution to Raymond.[9]

---

of codefendants' liability on the basis of their relative degrees of fault. See *Zeller* v. *Cantu*, 395 Mass. 76, 82-83 (1985).

[8]Although we need not decide in this case which party would have the burden of persuasion on the good faith issue, it should probably remain with the party bearing the burden of production.

[9]We do not decide whether a motion for summary judgment was the proper procedural vehicle to bring the matter before the judge. The occa-

2. *The comparative negligence verdict against Joseph.* There was ample evidence presented at trial to support a finding that Joseph was negligent. The jury could have found that Joseph was driving forty-five to fifty miles per hour in the passing lane of Route 6 as he approached the intersection with Herring Pond Road. There was a blinking yellow light facing him at the intersection, and the scenic parking area to the right of the road contained approximately forty to fifty cars. The jury could also have found that Joseph failed to apply his brakes until immediately prior to the accident, even though he observed Raymond's truck for a distance of over 200 feet. It is generally true that, when there is an intersection collision, the negligence of each operator involved is a question of fact for a jury. See *Clay* v. *Pope & Cottle Co.*, 273 Mass. 40 (1930).

Because in ruling on a motion for a judgment notwithstanding the verdict we decide only whether a reasonable jury could have returned the verdict that it did, *Hall* v. *Horizon House Microwave, Inc.*, 24 Mass. App. Ct. 84, 89 (1987), we conclude that the judge was correct in denying Joseph's motion. Similarly, because it is a matter within the trial judge's sound discretion whether to grant a new trial because the jury's verdict was against the weight of the evidence, *Worcester* v. *Eisenbeiser*, 7 Mass. App. Ct. 345, 349-350 (1979); *Egan* v. *Holderman*, 26 Mass. App. Ct. 942, 944 (1988), the judge did not err in denying the motion for a new trial.

Finally, Joseph asserts that the judge erred by giving an instruction based upon G. L. c. 90, § 17, which makes it prima facie evidence of operation at an unreasonable rate of speed to exceed a speed of thirty miles per hour for a distance of more than one-eighth of a mile "inside a thickly set-

sion for a motion pursuant to G. L. c. 231B, § 4(*b*), is one that may arise on the eve of trial, as it did here, or at any time during trial. The ten-day notice requirement in Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974), would seem to be unwieldy and inappropriate in such instances. No argument is made here that Raymond was entitled to a continuance or that the form of the motion was not proper.

tled or business district."[10] Joseph objected forcefully to the giving of an instruction based upon the statute before the judge delivered his charge. At a bench conference immediately after the charge, Joseph's attorney stated, "In view of the way the charge was given on Chapter 90, § 17, I'm not going to press those specific requests . . . except for the objections." We give Joseph the benefit of the doubt whether the vague reference to "objections" was sufficient to preserve for judicial review the issue whether an instruction based upon G. L. c. 90, § 17, should have been given (see Mass.R.Civ.P. 51[b], 365 Mass. 816 [1974]) because we conclude that there was sufficient evidence to justify a reasonable jury in finding that the vicinity of the accident was a business district. The term "business district" is defined by G. L. c. 90, § 1, as "the territory contiguous to any way which is built up with structures devoted to business." The police officer who investigated the accident scene testified that it was a "built up" area. An expert witness for the plaintiffs testified that, within the 300 to 700 feet Joseph travelled before the accident, there were two motels and at least one other structure on the north side of Route 6, a structure on the south side, and a crosswalk. Almost adjacent to the accident scene was the scenic overlook parking lot. The giving of the instruction, in the circumstances, was proper. See *Callahan* v. *Boston Elev. Ry.*, 215 Mass. 171 (1913); *Bonds* v. *Cummings*, 357 Mass. 763 (1970). Contrast *Conrad* v. *Mazman*, 287 Mass. 229 (1934).

The term "thickly settled," defined in G. L. c. 90, § 1, in some detail, has no application to the facts of this case. The language used first by the judge instructed the jury that the statute would not come into play unless they were to find

---

[10]General Laws c. 90, § 17, as amended through St. 1975, c. 329, § 1, provides: "No person operating a motor vehicle on any way shall run it at a rate of speed greater than is reasonable and proper, having regard to traffic and the use of the way and the safety of the public . . . . [I]t shall be prima facie evidence of a rate of speed greater than is reasonable and proper as aforesaid . . . if a motor vehicle is operated . . . inside a thickly settled or business district at a rate of speed exceeding thirty miles per hour for a distance of one-eighth of a mile . . . ."

that Joseph operated his vehicle for a distance of more than an eighth of a mile in a "thickly settled business district." As "thickly settled" and "business district" are used in the statute in the disjunctive, this error in the instruction favored Joseph. Later parts of the charge may have been confusing to the jury as to whether it would be sufficient, to invoke the statute, to find that the area was "thickly settled," a term the judge did not define. That problem could easily have been cured by the judge if Joseph's attorney had made a timely specific objection to the confusing language. Having expressed his satisfaction, at least with the form of the charge relating to the effect of the statute, he may not argue on appeal about the judge's terminology.

Accordingly, we vacate the judgment on the counterclaim and order judgment to enter in favor of Joseph Noyes, the defendant in counterclaim. In all other respects, we affirm the judgment.

*So ordered.*