McEvoy, J.
Defendant, United Technologies Corporation (UTC), has entered into a settlement agreement with the plaintiff, Mass. Ave. Laundries (Mass. Ave.), pursuant to G.L.c. 23 IB, and is now seeking summary judgment as to all claims in this lawsuit. All parties assent to the allowance of the settlement and the grant of summary judgment, with the exception of defendant, Cissell Manufacturing Co. (Cissell). Cissell has cross-claimed against UTC for contribution and indemnity, and therefore, opposes the dismissal of UTC from this lawsuit. This court heard arguments on the motion on February 26, 1996, and for the reasons set forth below, the defendant, UTC’s motion for summary judgment and for separate and final judgment is ALLOWED.
BACKGROUND
Mass. Ave. brought this product liability action to recover for damages sustained at a February 9, 1988 fire at the site of its laundry, allegedly caused by a defective steam iron. The defendant, Cissell, is the designer, manufacturer, and distributor, of the commercial hand-operated steam iron which allegedly caused the fire. As part of the product liability claim the plaintiff alleges that the failure of the iron was due to an improper design, improper manufacture, and/or the improper servicing of the iron and/or its component parts. UTC is the designer, manufacturer, and distributor of a thermostat, the component part of the iron which is alleged to have malfunctioned. Defendant, M&M Machineiy, provided service to said iron.
The complaint enumerates causes of action for negligent design and manufacture, negligent failure to warn, breach of express and implied warranties, and violation of G.L.c. 93A. The claim for negligent failure to warn stems from the inadequate warnings provided to the consumer regarding the thermostat. The thermostat had a finite life and would malfunction which necessitates that the thermostat be replaced every three to four years. At the time of the fire, the thermostat in the Mass. Ave. Laundry iron was approximately seven years old and had yet to be replaced.
Mass. Ave. and UTC entered into a release in settlement of claims on September 14, 1995. UTC asked all parties to execute a stipulation of voluntary dismissal pursuant to Mass.R.Civ.P. 41(a), but Cissell refused, due to the existence of its cross claim.
DISCUSSION
This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial demonstrates the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party is unlikely to sub *167 mit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “The nonmoving party cannot defeat the motion for summary judgment by resting on its pleadings and mere assertions of disputed facts . . .” LaLonde v. Eissner, 405 Mass. 207, 209 (1989). Establishing the absence of a triable issue requires the nonmoving party to respond by alleging specific facts demonstrating the existence of a genuine issue of material fact. Pederson v. Time, Inc., supra at 17.
UTC contends that it-is entitled to summary judgment because the settlement with Mass. Ave. was executed in good faith, and a good faith settlement extinguishes any claims for contribution. G.L.c. 23IB, §4. UTC also alleges that there is no basis for Cissell to claim a right to indemnification. UTC is seeking the entry of separate and final judgment on these grounds.
G.L.c. 23IB, §4 states, in relevant part, that;
When a release or covenant not to sue or not to enforce judgment is given in good faith to one or two or more persons liable in tort for the same injury: ... (b) It shall discharge the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.
G.L.c. 23 IB, §4. “Our courts have stated that the statute was intended to encourage settlements.” Noyes v. Raymond, 28 Mass.App.Ct. 186, 189 (1990) (citations omitted). “The goal of encouraging settlements may be achieved only to the extent that motions for discharge based upon settlements are routinely allowed, with extended hearings on the question of good faith the exception. If it were otherwise, a party seeking to avoid trial by settling a claim could rarely achieve that objective . . .” Noyes, supra at 189-90.
In its opposition, Cissell has not alleged that the settlement was not executed in good faith, and “the burden of coming forward with some showing of lack of good faith ought to rest, we think, with those opposing the discharge.” Noyes v. Raymond, 28 Mass. App. at 191. The settlement was for $25,000 and the amount of the settlement cannot be the basis of a determination of a lack of good faith. Id. at 190. Since the reasonableness of the settlement has not been challenged, the evidence before this court supports a finding that the settlement was fair and reasonable. Id. at 191. A tort claimant has the power to grant a release from liability to one of several joint tortfeasors, and if that release is given in good faith and before judgment, it will preclude a claim for contribution against the released tortfeasor. Grace v. Buckley, 13 Mass.App.Ct. 1081, 1081 (1982). Any claim against UTC by Cissell for contribution would fail because a release of liability was granted to UTC by the plaintiff. G.L.c. 23IB §4(b); Noyes v. Raymond, 28 Mass.App.Ct. at 191.
Three different sets of circumstances give rise to a right to indemnification: an express agreement; a contractual right implied from the nature of the parties’ relationship; and a tort based right, when there is great disparity in the fault of the parties. Araujo v. Woods Hole, Martha's Vineyard, etc., 693 F.2d 1, 2 (1982), citing Prosser, Law of Torts §51 (4th ed. 1971); Decker v. Black & Decker Manufacturing Co.; Lenox Machine Co., 389 Mass. 35, 37-42 (1983). Cissell claims that there are genuine issues of material fact remaining as to whether UTC’s thermostat was defective, which would deem UTC the culpable party, and give rise to a tort based claim for indemnification. Cissell also claims that genuine issue of fact remain regarding whether Cissell sold the iron with any of the component parts which were part of the iron at the time of the fire.
There was no express contractual agreement to indemnification executed by Cissell and UTC. A right to indemnification may not be implied merely from the fact that Cissell is subjected to tort liability for an injury that it believes UTC played a part in causing. Araujo v. Woods Hole, Martha’s Vineyard, etc., 693 F.2d at 2. To imply such an agreement requires unique special factors demonstrating that the parties intended that the would-be indemnitor bear the ultimate responsibility for the plaintiffs safety, or when there is a generally recognized special relationship between the parties. Id. at 2-3. Neither situation exists here.
The only remaining theory of indemnification is tort based and it requires that Cissell be only passively negligent and UTC be actively at fault because indemnity is permitted only if one does not join in the negligent act, but, is exposed to derivative or vicarious liability for the wrongful act of another. Decker v. Black & Decker Manufacturing Co.; Lenox Machine Co., 389 Mass. at 40; Stewart v. Roy Brothers, Inc., 358 Mass. 446, 459 (1970). See also Toman by Toman v. Underwriters Lab, Inc., 707 F.2d 620, 621 (1983); Araujo v. Woods Hole, Martha’s Vineyard, etc., 693 F.2d 1, 3 (1982). Where the party seeking indemnification was itself guilty of acts or omissions proximately causing the plaintiffs injury, tort indemnification is inappropriate. Araujo v. Woods Hole, Martha’s Vineyard, etc., 693 F.2d at 3.
The plaintiffs expert is expected to testify that Cissell knew from its supplier and its independent testing that the thermostat had a finite life and would malfunction. With this knowledge, Cissell failed to warn the consumer, and failed to provide an alternative safety mechanism which would have prevented the fire. This alleged negligence is separate and independent from any negligent acts that may be attributed to UTC. “A supplier of a component part containing no latent defect has no duty to warn the subsequent assembler or its customers of any danger that may arise after the components are assembled.” Mitchell v. Sky Climber Inc., 396 Mass. 629, 631 *168 (1986). There is nothing in the summary judgment record which alleges that the thermostat was defective; the theory is that the thermostat malfunctioned, which it was known to do after a period of time. The nature of Cissell’s culpability is not derivative of any acts of UTC.
Cissell’s negligence, if any, stems from its own acts and/or omissions and therefore, Cissell is not entitled to indemnification from UTC.
ORDER
It is therefore ORDERED that the defendant, UTC’s, motion for summary judgment and for separate and final judgment be ALLOWED.