Brassard, J.
This case arises out of a fire that occurred at the home of Theodore and Gail Nawn, in which their two daughters, Ashley and Melissa, and their nephew, Michael LaBiie, were seriously burned. Defendants State Industries (“State”), the manufacturer of the Nawns’ water heater, and Rheem Manufacturing (“Rheem"), the manufacturer of the Nawns’ furnace, have settled with the plaintiffs and now seek the Court’s approval of that settlement. Approval is opposed by Bay State Gas (“Bay State”). Plaintiffs move, pursuant to Mass.R.Civ.P. 41(a)(2), to dismiss all claims against Rheem and State. Bay State opposes this motion as well.
Bay State brought crossclaims against Rheem and State for contribution and indemnification. Rheem and State move for summary judgment on these cross-claims and for separate and final judgment pursuant to Mass.R.Civ.P. 54(b). Bay State moves pursuant to 56(f) to continue the motions for summary judgment to allow Bay State time for further discovery.
Finally, Rheem moves for summary judgment on the crossclaims of Melanson and Sons Plumbing and Heating (“Melanson”), the company that purchased the furnace from Rheem and installed it at the Nawns’ house.
For the following reasons, plaintiffs’ settlement is approved, plaintiffs’ motion to dismiss their claims against Rheem and State is allowed, Rheem and State’s motions for summary judgment against Bay State on Bay State’s crossclaims are allowed, Rheem and State’s motions for separate and final judgment are allowed, Bay State’s motion for further discovery is denied, and Rheem’s motion for summary judgment as to Melanson’s crossclaims is allowed.
I. Factual Background
The following facts are derived from the pleadings and the record before the Court. On September 14, 1991, late in the afternoon, a fire occurred in the garage of the Nawn home at 31 Island Pond Road, Dracut, Massachusetts. At the time of the fire, the Nawns’ two children, Ashley, age two and one-half years, and Melissa, age three and one-half years, were playing with their cousin Michael LaBrie, age three and one-half years, in the basement garage of the Nawns’ raised ranch house.
The house was a single story wood frame structure with a walk out basement and a two bay garage located at grade level on the north end of the house. The garage had overhead doors with electric openers for each bay, and an exterior personnel entrance door located be *222 tween the overhead doors. At the time of the incident the three children were playing in the garage with these overhead doors closed.
The east bay had an enclosed utility room measuring approximately six feet by twelve feet on the south end at the rear of the east bay .garage. The Nawns stored gasoline and a chainsaw in the east garage bay about seven feet from the utility room door. At the rear of the larger west garage bay was a personnel entrance door to the house.
The utility room contained two gas-fired appliances, a water heater and furnace, both supplied by LP gas. The water heater was on a raised three inch high by thirty-three inch deep concrete pad shelf which ran the width of the utility room. The furnace was raised off the floor on 2" by 4" lumber on edge with 3A" by 3" boards on the top. This provided a partially opened wood frame base approximately four inches high under the furnace open return air plenum. The water heater and furnace flues were ducted to a common chimney in the northwest corner of the utility room. The room adjoining the utility room on the house side (east) was a bathroom/laundry room. There was an opening in this wall near the floor into the utility room for the diyer vent. A cold air return duct'from the house was connected to the furnace return air plenum on the side of the furnace. The furnace return air plenum was' also open at the bottom. The pilot light and burners for the furnace were located above the return air plenum and fan compartment.
Evidence found in the garage after the fire indicates that gasoline had spilled on the garage floor and that the spilled gasoline ignited. The adults in the house, who were on the second floor at the time of the incident, evacuated the children. The fire was confined to the garage. The children have no memory, knowledge, or information about how or why the fire started, and no one else observed how the fire started.
II. Approval of Settlement
General laws c. 231, §140C provides, in relevant part, as follows:
The trial court may review and approve a settlement for damages because of personal injury to a minor or incompetent person in any case before the court where any party has filed a petition for settlement approval signed by all parties. The trial court may make such order and take such action as it deems necessary to effectuate the disposition of a settlement approval including but not limited to the appointment of a guardian, the appointment of a guardian ad litem, or the holding of an evidentiary hearing.
In the instant case, the plaintiffs and defendants Rheem and State seek Court approval of their settlement.
Under the terms of the settlement, Rheem and State are to pay $50,000 each. $50,000 of the $100,000 total is to be divided among the plaintiffs as follows: each of the minor plaintiffs will receive $15,000, Theodore and Gail Nawn will receive $3,000, and Michael and Jane LaBrie will receive $2,000. The other $50,000 will be used to satisfy legal expenses already accrued and for which the plaintiffs are ultimately responsible. The settlement waives all legal fees to plaintiffs’ counsel. Thus the full $100,000 inures to the benefit of the plaintiffs. J. Owen Todd, Esquire, the guardian ad litem appointed by this Court pursuant to G.L.c. 231, §140C, reports that the settlement is in the best interests of the minors.[1]
Bay State, the only parly that opposes court approval of the settlement, argues that the settlement agreement is not in the best interests of the minor plaintiffs because the plaintiffs’ claims against Rheem and State are based upon breach of warranty, which has a lower standard of proof than the negligence claims which the plaintiffs have made against Bay State, and because each of the minor plaintiffs will only receive $15,000.
To the extent that Bay State has any standing to challenge the settlement, pursuant to G.L.c. 231, §140C-l/2 as distinct from arguing lack of good faith pursuant to G.L.c. 23 IB, §4, this Court concludes that the settlement is in the best interests of the minor plaintiffs and accordingly approves the settlement. The Court places great weight on the guardian ad litem’s report that the settlement is in the best interest of the minor plaintiffs. The Court finds that the settlement amount is not insubstantial, and, as is noted in Sections IV. A and B of this decision, that the plaintiffs’ claims against Rheem and State may be weak and problematic.
The Court also approves the fees of the guardian ad litem.
III. Plaintiffs’ Motion to Dismiss their Claims Against the Settling Defendants, Rheem and State, Pursuant to 41(a)(2)
Plaintiffs move to dismiss their claims against the settling defendants, Rheem and State. Rule 41(a)(1) of the Massachusetts Rules of Civil Procedure provides that a plaintiff may dismiss an action without order of the court by filing a stipulation of dismissal signed by all parties that have appeared in the action. However, where all parties do not sign the stipulation, as in the instant case, a plaintiff may only dismiss an action upon order of the court. Mass.R.Civ.P. 41(a)(2).
Bay State is the only party that opposes the motion to dismiss. It argues that any order dismissing Rheem and State should be crafted in such a way so as to protect Bay State’s crossclaims against Rheem and State for contribution and indemnification.
This Court has approved the settlement, and in light of this Court’s decision to allow summaiy judgment on Bay State’s cross-claims for contribution and indemnification, infra at Section IV, allows the *223 plaintiffs’ motion to dismiss their claims against Rheem and State.
IV. Rheem and State’s Motions for Summary Judgment on Bay State’s Crossclaims for Contribution and Indemnification
Rheem and State have moved for summary judgment on Bay State’s crossclaims for contribution and indemnification. This Court will grant summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial demonstrates the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991). The nonmoving party must respond by alleging specific facts demonstrating the existence of a genuine issue of material fact. Pederson, 404 Mass. at 17.
A. Contribution
General Laws c. 23IB, §4, provides in relevant part that “[w]hen a release or covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury: . . . (b) It shall discharge the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.” (1994). However, “(t]he statute neither defines ‘good faith’ nor describes the burden of the party seeking to be discharged on the basis of a settlement.” Noyes v. Raymond, 28 Mass.App.Ct. 186, 188 (1990).
The dual purpose of the statute is to encourage settlement and to avoid collusion, fraud, and other wrongful conduct. Id. at 189. ‘The goal of encouraging settlements may be achieved only to the extent that motions to discharge based upon settlements are routinely allowed, and extended hearings on the question of good faith the exception.” Id. at 189. If it were otherwise, the issue of good faith would be the subject of a full trial or the settling defendant would nevertheless be forced to stand trial on the merits of the tort claim, providing little incentive to settle. Id. at 190.
The party relying upon a settlement in seeking to be discharged has the initial burden of establishing that a settlement has been agreed upon. Id. at 191. The party opposing the discharge has the burden of proving a lack of good faith. Id. at 191. Lack of good faith means collusion, fraud, dishonesty, and other wrongful conduct. Id. at 190.
Here State and Rheem have submitted a copy of their respective release and settlement agreements. This Court has approved the settlement and granted plaintiffs’ motion to dismiss all claims against Rheem and State.
Bay State contends that the plaintiffs’ settlements with State and Rheem were not made in good faith. As evidence of the lack of good faith, Bay State maintains that (1) the settlements will force Bay State to bear an unfair and disproportionate share of any plaintiffs’ recovery, (2) plaintiffs’ difficulty of proof on the breach of warranty claims against Rheem and State is lower that on the negligence claims against Bay State, (3) the $50,000 paid by each defendant is small in comparison to their potential judgment liability, especially where the plaintiffs estimate their damages to be $18,500,000, and (4) the settlement is contrary to public policy because the best interests of the children are not being served.
Bay State has not demonstrated that the settlement is collusive, fraudulent, dishonest, or otherwise wrongful.[2] In fact, all parties agree that there is no issue of collusion or fraud. The fact that the settlement amount is low in comparison to the plaintiffs estimate of their own damages, by itself, is not material. Id. at 190. Furthermore, there is evidence that the settlement was fair and reasonable as the Court-appointed guardian ad litem approved the settlement as in the best interest of the minor plaintiffs. Plaintiffs’ counsel states that the case against Rheem and State is weak because of the warnings on their products and because any defect was in the installation of the products and not in their design. Counsel further argues that plaintiffs, tactically, are better off if they proceed to trial solely against Bay State.
The Court finds that the plaintiffs and defendants Rheem and State entered into the settlement in good faith, and therefore, pursuant to G.L.c. 231B, §4, Rheem and State are discharged from all liability for contribution to any other tortfeasor.
B. Indemnification
Plaintiffs’ claim, as it has evolved through discovery and amended complaints, is that the furnace and water heater were improperly installed. With respect to the furnace, plaintiffs contend that it was improperly installed because it was in the small utility room attached to the garage and did not have a base plate, so that it sucked air in through the bottom of the furnace from the adjacent garage. A warning on the furnace provided as follows:
WARNING: IMPORTANT NOTICE PER YOUR SPECIFIC ORDER, THIS FURNACE HAS AN OPEN BASE PAN WITH AIR FILTER IN THE BOTTOM POSITION AND MUST BE INSTALLED WITH RE *224 TURN AIR DUCT CONNECTED AND SEALED TO THE BOTTOM OF FURNACE. A SOLID METAL BASE PLATE (SEE TABLE) MUST BE IN PLACE WHEN THE FURNACE IS INSTALLED WITH SIDE OR REAR AIR DUCTS. FAILURE TO INSTALL A BASE PLATE COULD CAUSE PRODUCTS OF COMBUSTION TO BE CIRCULATED INTO THE LIVING SPACE AND CREATE POTENTIALLY HAZARDOUS CONDITIONS.
(emphasis in original). As to the water heater, plaintiffs contend that it was not properly elevated, despite warnings in the installation instructions that accompanied the product that if it were installed in a garage, it must be elevated eighteen inches. The plaintiffs’ theory is that, because of the improper installation, flammable gasoline vapors from the garage were sucked into the utility room by the furnace and ignited by the water heater. The plaintiffs’ claims against Bay State are based upon the alleged failure of Bay State at the time of the connection of the gas and on two later visits by Bay State employees to observe that the furnace and water heater were improperly installed. Counsel for the plaintiffs indicated in open court that the plaintiffs would not contend at trial that Bay State is vicariously liable for any design defects of the manufacturers.
Plaintiffs contend that their claims against Rheem and State are weak because of the warnings and instructions that the manufacturers supplied with the products and because the plaintiffs’ theory of the case is essentially that these products were negligently installed and not that they were negligently designed.
Bay State’s theory of the case is that the fire did not start in the utility room, but rather elsewhere in the garage. Bay State’s experts have concluded, according to its answers to interrogatories, that the vapors from the spilled gasoline dispersed from the spill area and were diluted to well below their flammable range, and that at no time did an ignitable quantity of gasoline vapor spill out of the garage into the utility room. The ignition of the gasoline vapors had to occur within the Nawn garage, and not in the utility room, because the garage was the only place where ignitable gasoline vapors were found.
This Court concludes that this is not a case in which Bay State has any reasonable prospect of recovering through the theory of indemnification. Flesner, 410 Mass. at 809. There is no contract indemnification because these parties are all strangers to one another and have no contracts between them. There is no common law indemnification because Bay State is not in either product’s chain of title. Bay State did not purchase these products from Rheem and State, and thus Bay State is not potentially vicariously liable as one in the chain of title for the negligence in design of another. Rheem sold the furnace to Melanson, which in turn installed it; and State sold the water heater to R.R. Waters, which in turn installed it. Bay State has no common law right of indemnification against Rheem or State because any negligence on the part of Bay State was independent of any negligence or defective design on the part of Rheem or State. Economy Eng'g Co. v. Commonwealth, 413 Mass. 791, 793-94 (1992). “Common law indemnification has been available traditionally only to a defendant whose liability was vicarious or formal." Id. at 794.
V. Bay State’s Motion for Discovery Pursuant to 56(f)
Bay State moves, pursuant to Rule 56(f) of the Massachusetts Rules of Civil Procedure, that this Court postpone deciding Rheem and State’s motions for summary judgment until after Bay State has had an opportunity to depose John Hoffman, Leonard Mandell, and Michael E. Mone.
Hoffman and Mandell are the plaintiffs’ expert witnesses, and are expected to testify that the fire started because the improperly installed water heater and furnace ignited gasoline vapors that were drawn into the utility room by the return air flow of the furnace. Bay State wishes to depose these experts in order to establish that on cross-examination at trial, Bay State could elicit testimony to the effect that the manufacturers had negligently designed their products. Bay State believes that the jury, upon hearing testimony from the plaintiffs’ experts, that the products were defectively designed, would have a basis for finding Rheem and State liable on the indemnification crossclaims of Bay State. However, at trial, the essential position of Bay State will be that neither of these products had anything to do with the fire. This hoped for cross examination at trial is too attenuated to warrant the requested depositions and the delay of the settlement.
Michael Mone is the plaintiffs’ counsel. Bay State wishes to depose him in order to determine whether the plaintiffs settled with defendants Rheem and State in good faith.
Bay State has taken numerous depositions and has its own experts. There should not be a mini-trial or mini-discovery on the issue of good faith settlement. Noyes v. Raymond does not contemplate such depositions and such depositions are not consistent with G.L.c. 23 IB, §4. The Court therefore denies Bay State’s motion.
VI. Rheem’s and State’s Motions for Separate and Final Judgment Pursuant to Mass.R.Civ.P. 54(b)
Both Rheem and State move, pursuant to Rule 54(b) of the Massachusetts Rules of Civil Procedure, for separate and final judgment. The Court allows these motions.
*225 VII. Rheem’s Motion for Summaiy Judgment as to Melanson’s Crossclaim for Contribution and Indemnification
Rheem has moved for summary judgment with respect to Melanson’s crossclaims for contribution and indemnification. Melanson’s concern was that there continued to be a breach of warranty claim against it in the Complaint. At the hearing, counsel for the plaintiffs stipulated that the plaintiffs were going to dismiss the breach of warranty claims against Melanson. Melanson’s counsel stated that if the breach of warranty claims were dismissed, Melanson would not oppose Rheem’s motion for summary judgment as to Melanson’s crossclaims for contribution and indemnification. Thus, there being no opposition by Melanson to Rheem’s motion for summary judgment, the Court allows the motion for summary judgment.
ORDER
Accordingly, it is hereby ORDERED that:
1) Plaintiffs’ settlement with Rheem and State be APPROVED;
2) Plaintiffs’ motion to dismiss their claims against Rheem and State pursuant to Rule 41(a)(2) be ALLOWED;
3) Rheem’s and State’s motions for summary judgment against Bay State on Bay State’s crossclaims for contribution and indemnification be ALLOWED;
4) Bay State’s motion for further discovery pursuant to Mass.R.Civ.P. 56(f) be DENIED;
5) Rheem’s and State’s motions for separate and final judgment pursuant to Mass.R.Civ.P. 54(b) be ALLOWED; and
6) Rheem’s motion for summary judgment as to Melanson’s crossclaims for contribution and indemnification be ALLOWED.

 J. Owen Todd, as guardian ad litem, reported, in part, as follows: “As a result of my inquiry, I believe that I developed an understanding of the facts of the case, the plaintiffs’ claim, the defendants’ positions and the strategy of plaintiffs counsel. I accorded considerable deference to plaintiffs’ counsel and to his wishes regarding the proposed settlement because of his legal ability in the area of the law and because I felt that it was in the best interest of the minor plaintiffs to do so. On the basis of the inquiry which I have made and the conclusion I have drawn from that inquiry, it is my opinion that the settlement which the plaintiffs propose to enter into with Rheem Manufacturing Co. and State Industries, Inc. is in the best interest of the minor plaintiffs.”

In fact, at an earlier hearing on this matter, counsel for Bay State indicated that a $100,000 settlement by each of the manufacturers would not raise an issue of good faith. Against the backdrop of the proposed $50,000 settlement from each manufacturer, counsel at this hearing argued that a $1,000,000 settlement would not raise an issue of good faith.