Quinlan, Regina L., A.J.

INTRODUCTION

This action arises from plaintiff Rick E. Brooks’ (Brooks) purchase of water-front residential property (the property) located at 95 Pickerel Cove Road, Mashpee, Massachusetts, from Gladstone Limited Partnership (Gladstone) in May 1998.[4] The two-count complaint alleges violations of G.L.c. 93A and violations of G.L.c. 184, §22. Defendant Thomas Quinn, doing business as Quinn and Driscoll Real Estate Limited (Quinn), brought a third-party action against Richard S. Dubin (Dubin), the mortgage lender’s attorney who conducted the title certification of the property, and Peter A. Sundelin (Sundelin), the attorney who represented Brooks in the property transaction. This matter is before the Court on the defendants’ Motion for Summary Judgment on Brooks’ claims and Sundelin’s Motion for Summary Judgment on Quinn’s third-party claims. For the following reasons, the defendant’s Motion for Summary Judgment is DENIED IN PART and ALLOWED IN PART. The third-party defendant Peter Sundelin’s Motion for Summary Judgment is ALLOWED.

BACKGROUND

The following facts, except where noted, are undisputed or are facts which this Court accepts as true for purposes of this motion.
In April 1998, Brooks examined the property at issue with Quinn. The property fronts on Mashpee-Wakeby Pond and is adjacent to a twenty-eight-lot subdivision in which approximately twenty-eight families reside. While the two men viewed the property, they discussed the existence of an easement on the property and the location of a chain-link fence on the property in relation to that easement. However, the precise conversations had while the parties were viewing the property is disputed. Brooks alleges that Quinn stated that there was a pathway or path on the other side of the chain-link fence which the people in the subdivision used to carry canoes to the pond and that the pathway would not be a problem for Brooks. Quinn contends that he told Brooks that there was an easement on the property for the benefit of the residents of the subdivision to access the pond. Quinn denies stating that there was a specific purpose for the easement and that the easement would not be a problem for Brooks. After purchasing the property, Brooks learned that the easement was not solely for the purpose of bringing canoes to the pond, but instead was a general easement not limited in its purpose. He also learned that the chain-link fence did not mark the actual line of the easement, but instead crisscrossed the actual easement location. Brooks alleges individuals in the subdivision use the easement for all purposes, including walking down to the pond to sit on his beach.
The terms of the easements were not recited in the recorded documents in the property’s chain of title at *647 the Registry of Deeds. However, the express terms of the easement were recited in a recorded deed of the adjacent properly. The adjacent property’s deed created an eight-foot wide easement on the properly appurtenant to the thirty-six-acre tract which is currently the twenty-eight-lot subdivision, for foot access to Mashpee-Wakeby Pond.
In May 1998, Gladstone conveyed the property to Brooks by a quitclaim deed containing quitclaim covenants. Prior to purchase, neither Brooks nor his attorney, Sundelin, conducted an independent title examination of the property. Instead, Brooks relied on the title certification provided by Dubin, the mortgage lender’s attorney. Dubin’s certification of title stated that no easements encumbered the property.
Prior to Brooks’ purchase of the property, the Mashpee Conservation Commission (Commission) issued Gladstone a Violation Notice and an Order of Conditions (Order) requiring the restoration of altered wetlands and a recording of the Order in the property's chain of title pursuant to G.L.c. 131, §40. Gladstone did not record the Order or send a copy of the Order to Brooks. After Brooks purchased the property, the Commission informed him of the violation and that he, as the buyer of the property, was required to restore the wetlands per the Commission’s Order. Brooks complied with the Commission’s Order and restored the wetlands.
On November 3, 2004, Brooks granted Sundelin a Release of Liability releasing Sundelin of any liability related to the allegations set forth in the third-party complaint. The Release stated that Brooks fully released Sundelin from any and all liability connected to claims that Sundelin “fail[ed] to determine the existence or true nature of an easement along the edge of [his] property, either directly or by not properly supervising or reviewing the title work of another person.” The Release also stated that it was “granted in good faith, in consideration of a warm and satisfactory professional relationship, a careful assessment of the value ... of the potential claims [he] might have against Attorney Sundelin as set for in the Third Party Complaint, and also in consideration of a nominal monetary payment of one dollar in cash.”

DISCUSSION

The court shall grant summary judgment, pursuant to Mass.R.Civ.P. 56, where no genuine issue of material fact exist and where, viewing the record in the light most favorable to the non-moving party, the moving party demonstrates it is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991). The moving party must satify this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis, 410 Mass. at 716.

I. The Defendants’ Motion for Summary Judgment A. Claim Under G.L.C. 93A

Brooks alleges, among other things, that the defendants are liable under G.L.c. 93A for misrepresenting the scope and purpose of the easement on the property. As support for this allegation, Brooks points to 940 C.M.R. §3.16(2) which provides that it is an unfair or deceptive act if “[a]ny person . . . fails to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction.” Id. The defendants deny that any unfair or deceptive acts occurred. Viewing the evidence in the light most favorable to Brooks, and drawing all reasonable inferences in his favor, this Court finds that there is a genuine dispute as to whether Quinn was required to disclose to Brooks that the easement could be used for all purposes. At the very least there is a genuine issue of fact as to whether Quinn, on Gladstone’s behalf, stated to Brooks that the easement was limited to access by canoeists in the subdivision. Furthermore, there is also a triable issue on whether Brooks would have been influenced in the transaction had information that the easement was for all purposes and that an Order existed on the property been disclosed prior to the conveyance.[5]
Additionally, the defendants argue that the “Warranties and Representations Clause” in the purchase and sales agreement and the doctrine of merger by deed bars Brooks from maintaining this action. However, in Massachusetts, the assertion of a merger clause, an integration clause, or an exculpatory clause are not an automatic defense to allegations of fraud, deceit, or misrepresentation. Billingham v. Dornemann, 55 Mass.App.Ct. 166, 175 (2002); Sheehy v. Lipton Indus., Inc., 24 Mass.App.Ct. 188, 193 (1987). See Kannavos v. Armino, 356 Mass. 42, 48 (1969) (“half truths may be as actionable as whole lies”). Furthermore, merger by deed does not bar a claim for fraud or misrepresentation of a material fact. McMahon v. M&D Builders, 360 Mass. 54 (1971). For these reasons, Brooks has raised an issue of fact materially in dispute which may demonstrate that defendants committed an unfair or deceptive practice for the purposes of G.L.c. 93A.

B. Claims Under G.L.c. 184, §22

Brooks claims that Gladstone Corporation and the Bomstein defendants are liable under G.L.c. 184, §22 for Brooks’ expenses in removing the easement and restoring wetlands on the property. Brooks’ theory is that the easement and the Order of Conditions requiring Gladstone to restore wetlands on the property existed on the property at the time the property was conveyed and constituted encumbrances on the property. Gladstone Corporation and the Bomstein defen *648 dants assert that Brooks has not removed the easement entitling him to damages.
Under G.L.c. 184, §22, a grantor in a deed with a covenant against all encumbrances is liable for all damages sustained by the grantee in removing any actual or apparent encumbrances appearing from any public record. The right to recovery is confined to instances where the party seeking to recover has removed the encumbrances, such as paying mortgages, extinguishing liens, or redeeming from tax sales. Gallison v. Downing, 244 Mass. 33, 37 (1923). In the instant case, Brooks has not produced evidence sufficient to convince a reasonable jury that he has removed the easement, and therefore the defendants are entitled to summary judgment as to Brooks’ claim for damages incurred in removal of the easement.
Brooks argues that his restoration of the wetlands pursuant to the Order constituted a removal of an encumbrance and that Gladstone is liable for his expenses in its removal. The Wetlands Protection Act, G.L.c. 131, §40, provides that anyone who acquires the property in violation of the Act is responsible for restoring it to its prior condition, and that fines, imprisonment or injunctive relief be obtained by the Attorney General, local officials or any group of ten Massachusetts residents.
Although, under the statute, the Commission could impose fines or restrict the use of the property until it was brought into compliance such a restriction is not an encumbrance that Brooks may seek recovery for under G.L.c. 184, §22. See Silverblatt v. Livadas, 340 Mass. 474, 479 (1960) (holding contingent or inchoate lien which might result from building code violation not an encumbrance). Section 22 of G.L.c. 184 applies to covenants that a properly is free from all encumbrances.[6] Such covenants are warranty rather than quitclaim covenants. Specifically, the Commission’s Order is not an encumbrance “made by the grantor” within the terms of G.L.c. 183, §17 because the word “made” implies something more than mere inaction by the grantor.[7] Silverblatt, 340 Mass. at 480. Here, Brooks accepted a quitclaim deed which does not covenant against involuntary encumbrances such as a violation from the Conversation Commission. See id. at 477. Therefore, Gladstone is not liable under G.L.c. 184, §22 and is entitled to summary judgment as to Brooks’ claim in removing the Commission’s Order on the property.

II. Third-Party Defendant Sundelin’s Motion for Summary Judgment A. Claim for Contribution

Quinn’s third-parly complaint alleges a claim for contribution against Sundelin and Dubin. Quinn contends that Dubin and Sundelin’s negligence caused Brooks’ alleged economic injury and seeks a judgment against Dubin and Sundelin for contribution.
General law c. 23IB, §4 extinguishes claims for contribution against a purported joint tortfeasor who receives a prejudgment release from the injured parly provided the release is given in good faith. Noyes v. Raymond, 28 Mass.App.Ct. 186, 188 (1990). The party seeking discharge satisfies its initial burden of establishing good faith simply by showing that a settlement has been agreed upon and by describing its nature and terms. Id.; see also Chapman v. Bernard’s Inc., 198 F.R.D. 575, 578 (2001). The burden of production and persuasion then shifts to the party alleging a lack of good faith. Chapman, 198 F.R.D. at 78. Lack of good faith may be demonstrated by collusion, fraud, dishonesty, or other wrongful conduct. Noyes, 28 Mass.App.Ct. at 190.
Sundelin contends that the third-party plaintiffs contribution claim must fail because Brooks has granted him a Release of Liability in good faith. The Release recites that Brooks released Sundelin from any liability resulting from Sundelin’s failure to determine the existence or true nature of an easement along the edge of the property. The Release also states that it was granted after “a careful assessment.... of the potential claims” and in consideration of one dollar in cash. Based on this, Sundelin has established that Brooks granted the release in good faith.
Although Quinn points to the nominal consideration for the release as evidence of a lack of good faith, the amount of the consideration is not material in determining lack of good faith. Noye, 28 Mass.App.Ct. at 190, citing Grace v. Buckley, 13 Mass.App.Ct. 1081, 1082 (1982) (stating that the statute may preclude a claim for contribution even where a claimant receives nothing in exchange for releasing a defendant). Further, no inference of collusion arises merely from the fact the Brooks and Sundelin have a longstanding relationship. See id. at 191 (holding that there was no inference of collusion where husband granted release to wife). For these reasons, the plaintiff has not made a contrary showing of good faith and the defendant is entitled to summary judgment as a matter of law.

B. Claim for Indemnity

Quinn alternatively argues that he is entitled to be fully indemnified by Sundelin and Dubin. Quinn claims he has a right to tort-based indemnification from Sundelin because he is not at fault or is less at fault than Sundelin, for the acts Brooks alleges and that any liability he may incur is derivative of Sundelin’s wrongful acts. Based on the summary judgment record, there is no contractual relationship between Quinn, the seller’s broker, and Sundelin, the buyer’s attorney, from which a right to indemniiy might arise, either explicitly or impliedly. See Elas v. Unisys Corp., 410 Mass. 479, 482 (1991). Furthermore, the summary judgment record is devoid of any evidence of special factors that would indicate an intention by one party to indemnify another in certain situations. See Fall River Hous. Auth. v. Collins, 414 Mass. 10, 14-15 (1992). In addition, Quinn’s claim that indemnity is available due to an alleged disparity *649 of fault between himself and Sundelin is also without merit. See Economy Engineering Co. v. McConnell 413 Mass. 791, 794 (1992) (stating in dicta that it was not a case where the fault of one joint tortfeasor is so slight as to grant it rights of indemnity against another joint tortfeasor); see also Noyes, 28 Mass.App.Ct. at 190-91 n.7 (stating that “Massachusetts has not adopted apportionment of codefendants’ liability on the basis of their relative degrees of fault”). Because the parties do not stand in a vicarious or derivative relationship giving rise to a common-law right to indemnification, Quinn’s motion for summary judgment as to indemnity must fail.

ORDER

For the foregoing reasons, the defendant’s Motion for Summary Judgment with respect to Count I of the plaintiffs complaint is DENIED and with respect to Count II of the plaintiffs complaint is ALLOWED. The third-party defendant Peter Sundelin’s Motion for Summary Judgment is ALLOWED with respect to all Counts of the third-party complaint.

 Stuart Bomstein, as Trustee of Gladstone Realty Trust (formerly Gladstone Real Estate Trust), signed the purchase and sales agreement. Gladstone Limited Partnership deeded the properly to Brooks. Jamila Bernstein and Stuart Bernstein were beneficiaries of the Gladstone Realty Trust a/k/a Gladstone Real Estate Trust as of December 4, 1984, the date the trust was created.

 Brooks’ complaint alleges several other theories supporting his claim of violations of G.L.c. 93A, however, the Court need not address these theories because it finds a genuine issue of material facts exists regarding the allegations addressed by the Court.

 G.L.c. 184, §22, “Encumbrance of record; liability for removal,” provides in relevant part that:
Whoever conveys real property by a deed . . . which contains a covenant that it is free from all encumbrances shall, if it appears by a public record that an actual or apparent encumbrance, known or unknown to him, exists thereon, be liable in an action of contract to the grantee ... for all damages removing the same.

 G.L.c. 183, §17, “Quitclaim covenants,” provides in relevant part that:
In a conveyance of real estate the words “quitclaim covenants” shall have the full force, meaning and effect of the following words: The grantor . . . covenants with the grantee . . . that the granted premises are free from all encumbrances made by the grantor . . . (emphasis supplied).