LEE SLOCUM[1] & another[2] vs. ROBERT F. DONAHUE & another[3]; FORD MOTOR COMPANY, third-party defendant. No. 96-P-100. April 23, 1998. *Negligence, Motor vehicle. Contribution. Evidence, Settlement offer. Indemnity. Practice, Civil, Judgment.*

After Robert Donahue pleaded guilty to motor vehicle homicide in the death of their twenty-two month old son, the Slocums filed a civil action against the Donahues alleging negligence and gross negligence. The Donahues then filed a third-party complaint against Ford Motor Company (Ford), denying negligence and alleging that Ford was negligent and was in breach of warranties of merchantability and fitness for a particular use. The Donahues claim that, when Robert Donahue was in the car prior to the accident, he inadvertently pushed the floor mat on the driver's side under the throttle. When he later started to back the car down his driveway, the engine began to race and, although he repeatedly stepped on the brakes, his car continued to accelerate. The car's rear wheels hit the curb across the street from his house, became airborne, turned, and then hit a fence. When he got out of the car, he saw Todd Slocum lying on the lawn. The Donahues' expert would testify at trial that the floor mat was defective, permitting it to interfere with the operation of the vacuum booster which caused the power brakes to fail to function.[4]

Prior to trial, the Slocums and Ford signed a settlement agreement providing that Ford would pay $150,000 to the Slocums in exchange for a release of any claim. Ford then moved for summary judgment as to the Donahues' claims and on the grounds that the settlement was made in good faith and, pursuant to G. L. c. 231B, § 4, that all claims for contribution were thereby extinguished, and that there was no basis for the Donahues' claims for indemnity. Ford also moved for a separate and final judgment pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974). The Donahues appeal from the final judgment dismissing their third-party complaint against Ford.[5] We affirm.

1. *Right to contribution.* Under G. L. c. 231B, § 4, as inserted by St. 1962, c. 730, § 1, "When a release . . . is given in good faith to one of two or more persons liable in tort for the same injury: . . . (b) It shall discharge the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor." The Donahues argue on appeal that the settlement between Ford and the Slocums was not made in good faith and was collusive both because the amount of the settlement was for less than the value of the case and because Ford allegedly told the Slocums that Ford would allow them to use its experts so that the Donahues' attempt to attribute liability to Ford at trial would be unsuccessful.

The seminal Massachusetts case construing this statute in this context, *Noyes* v. *Raymond*, 28 Mass. App. Ct. 186 (1990), controls the instant case in material respects. The issue before the court in *Noyes* was the same as that

----

[1]Individually and as administrator of the estate of Todd Slocum.

[2]Cheryl Slocum.

[3]Dolores J. Donahue.

[4]Robert Donahue claims that he pleaded guilty in the criminal case because he feared receiving the maximum sentence if he proceeded to trial.

[5]After the entry of judgment in the third-party action in the lower court, the case of the Slocums against Robert Donahue proceeded to trial. The jury returned a verdict against Donahue.

before the court here: "whether, on the basis of the limited facts about the settlement which were before the judge in advance of trial, Joseph [Noyes] was entitled to be discharged from all liability for contribution to Raymond." *Id.* at 188. The basis for an exception requiring an extended hearing on the issue of good faith had not been made to appear in *Noyes* and has not been presented here.

As in *Noyes*, there were facts before the judge showing that the settlement between Ford and the Slocums was fair and reasonable. It was reasonably predictable that damages would be high and that a jury would find liability on the part of Robert Donahue, in view of the fact that he pleaded guilty in the criminal case and on the basis of his admission in his deposition that, prior to the accident, he was drinking from a bottle of vodka that he kept under the driver's seat in a brown bag. Given these facts, it was not unreasonable to think that a jury might not find any liability on the part of Ford.

According to the Donahues' attorney, in February of 1995, counsel for Ford notified the Donahues' attorney that Ford was proposing a settlement offer totaling $300,000 with $150,000 to be contributed by Ford, $125,000 by Liberty Mutual Insurance Company (the policy limits of the Donahues' insurance carrier), and $25,000 by the Donahues personally.[6] The Donahues' attorney responded that she would discuss the matter with her clients, but that $25,000 was not an amount that her clients would be financially able to contribute to the settlement. Apparently the subsequent negotiations between the Slocums and Ford occurred without the Donahues' participation. In May, 1995, the Slocums settled with Ford for $150,000. *Noyes* instructs that the purpose of the contribution statute is to promote settlement, that a low settlement figure *alone* is not evidence of "bad faith," and that settlements should be routinely approved without extended hearings if the purpose of the statute is to be served. Further, the court in *Noyes* observed that lack of good faith was evidenced by "collusion, fraud, dishonesty, and other wrongful conduct." *Id.* at 190. In these circumstances Ford's settlement with the Slocums for an amount contemplated as its contribution to a total settlement package does not indicate bad faith or collusion.

As to the Donahues' contention that the Slocums' use of experts originally retained by Ford is evidence of collusion, we disagree.[7] In *Commercial Union Ins. Co.* v. *Ford Motor Co.*, 640 F.2d 210 (9th Cir.), cert. denied, 454 U.S. 858 (1981), cited by the Donahues, the court found that the settlement was collusive because, to some extent, it was "dictated by the tactical advantage of removing a deep-pocket defendant because of the experts it could produce" and, therefore, "[was] not made in 'good faith' consideration of the relevant liability of all parties." *Id.* at 214.[8] The Donahues' argument suggests that there was bad faith here because the Slocums were not interested in the deep

---

[6]Counsel for the Slocums had earlier indicated to Ford's counsel that they would consider settling this matter with all parties for a total settlement package of $400,000.

[7]In reaching this conclusion, we have not considered the question whether Ford would "allow" the Slocums to use its experts.

[8]In *Commercial Union*, the United States Court of Appeals for the Ninth Circuit was construing the California contribution statute. This court noted in *Noyes* that California's law differs from that of Massachusetts because "Massachusetts has not adopted apportionment of codefendants' liability on the basis of their relative degrees of fault." 28 Mass. App. Ct. at 190-191 n.7.

pocket of Ford, but settled with Ford because they believed that Ford was not responsible for the death of their son. Such a speculation does not trigger the necessity for a more extensive hearing on the issue of good faith. See *McDermott, Inc.* v. *AmClyde*, 511 U.S. 202, 213 n.16, 216-217 (1994) (while recognizing "the cursory nature of most good-faith hearings," also noted "the large potential for unfairness" in "the *pro tanto* rule untamed by good-faith hearings"). The motion for summary judgment was properly allowed.

2. *Right to indemnity.* "Under G. L. c. 231B, contribution is allowed between joint tortfeasors who cause another, by reason of their wrongdoing, to incur injury or damage. In addition, . . . the statute permits a plaintiff to settle with one joint tortfeasor and still have recourse against remaining tortfeasors (subject to the limitations stated in the statute). The right to contribution, unlike the right to indemnity, is based on the shared fault of the joint tortfeasors. Indemnity, on the other hand, allows someone who is without fault, compelled by operation of law to defend himself against the wrongful act of another, to recover from the wrongdoer the entire amount of his loss, including reasonable attorney's fees." *Elias* v. *Unisys Corp.*, 410 Mass. 479, 482 (1991). "[I]ndemnity is permitted only when the would-be indemnitee does not join in the negligent act." *Decker* v. *Black & Decker Mfg. Co.*, 389 Mass. 35, 40 (1983), citing *Afienko* v. *Harvard Club*, 365 Mass. 320, 336 (1974). "This right to indemnity is limited to those cases in which the would-be indemnitee is held derivatively or vicariously liable for the wrongful act of another." *Decker* v. *Black & Decker Mfg. Co.*, 389 Mass. at 40.

If the claim against Ford had gone to trial and Ford had been found liable to the Donahues,[9] it would have been as a result of its negligence or breach of warranty.[10] "Such liability will not be derivative or vicarious in nature, nor will it be constructive rather than actual. Accordingly, the third-party plaintiffs are not entitled to indemnification . . . ." *Id.* at 41.

Once Ford settled with the Slocums, the sole question for the fact finder was whether Todd Slocum's death was caused by defendant Robert Donahue's negligence.[11] Robert Donahue was free to claim that he was not negligent and that Todd Slocum's death was caused by Ford's negligence in selling a defective product. Under no set of circumstances could the jury properly have held the Donahues liable to the Slocums for the conduct of Ford. Further, in holding Robert Donahue negligent (as they did; see note 5, *supra*) the jury concluded that he was solely negligent (or was a joint tortfeasor with Ford). His liability is not vicarious and he is not entitled to indemnification from Ford. If Ford had remained in the case, any liability on its part would have been as a joint tortfeasor, and contribution would have been required. Indemnity would not have been appropriate.[12] "Contribution and indemnity are mutually exclusive remedies." *Callahan* v. *A.J. Welch Equip. Corp.*, 36

---

[9]The Slocums never made a direct claim against Ford.

[10]The Supreme Judicial Court in *Wolfe* v. *Ford Motor Co.*, 386 Mass. 95, 97-98 (1982), determined that a claim for breach of the warranty of merchantability is, in essence, a tort claim to which G. L. c. 231B, § 1(*a*), applies.

[11]After this appeal was filed and before trial, defendant Dolores Donahue was voluntarily dismissed from the case.

[12]If, as the Donahues claimed, any damages sustained by the Slocums were caused not by the negligence or gross negligence of the Donahues (but, rather, solely as a result of Ford's breach of warranty) this would have constituted an absolute defense to the

Mass. App. Ct. 608, 613 (1994). Summary judgment on the issue of indemnification was appropriate.

3. *Separate and final judgment.* The Donahues argue that the failure to make explanatory findings is grounds for reversing the entry of separate and final judgment of dismissal. We disagree. Where the reasons for the judge's determination are clear, such findings are not required. *Dattoli* v. *Hale Hosp.*, 400 Mass. 175, 176-177 (1987). In this case, as in *Dattoli*, "[t]here were no other claims against [Ford], nor was there substantial overlap between the issues to be decided on appeal and those remaining for trial." *Ibid.* There did not appear to be any reason for requiring Ford to wait until final judgment was entered against the Donahues. Indeed, the Donahues do not recite any such reason.

The third-party defendant has requested, in its brief, that attorney's fees and double costs be awarded on the basis that the appeal is frivolous. That request is denied.

*Judgment affirmed.*

*Virginia Casey Goscinak* for Robert F. Donahue & another.

*Michelle I. Schaffer* for Ford Motor Company.

---

Slocums' action but would not provide the basis for an indemnity claim. *Decker* v. *Black & Decker Mfg. Co.*, 389 Mass. at 41.

