NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

19-P-503                                        Appeals Court


CUSTOM KITS COMPANY, INC.  vs.  SHAWN TESSIER & others. [1]


No. 19-P-503.

Worcester.        January 10, 2020. - May 1, 2020.

Present:  Desmond, Wendlandt, & McDonough, JJ.


Joint Tortfeasors.  Joint and Several Obligation.  Damages,
    Mitigation.  Practice, Civil, Findings by judge.



Civil action commenced in the Superior Court Department on
November 24, 2010.

Following review by this court, 83 Mass. App. Ct. 1125
(2013), a motion for assessment of damages was heard by Daniel
M. Wrenn, J., and entry of judgment was ordered by him.


Scott Sinrich for the plaintiff.


DESMOND, J.  In this case we consider whether, following a

hearing to assess damages, a Superior Court judge properly

dismissed the plaintiff's claims against two defendants, Phillip

J. Ryznal and Professional Tax Services of Oxford, Inc.

_____

[1] Phillip J. Ryznal and Professional Tax Services of Oxford,
Inc.  Neither of these defendants has participated in this
appeal.

(collectively, Ryznal defendants), because, although the judge found that the defendants' negligence caused the plaintiff a loss of $289,866, the plaintiff had been "made whole" by a joint tortfeasor.  For the reasons that follow, we vacate the judgment of dismissal as to these two defendants and remand for a reassessment of damages.

Background.  We draw the facts from the judge's findings, the prior decision of a panel of this court in Custom Kits Co. v. Tessier, 83 Mass. App. Ct. 1125 (2013) (Custom Kits I), and the undisputed record.  See Marshall v. Stratus Pharms., Inc., 51 Mass. App. Ct. 667, 670 (2001) ("on the questions relating to damages, the judge's findings, if not clearly erroneous, control").

Custom Kits Company, Inc. (Custom Kits), is a closely held corporation originally formed by Michael and Shawn Tessier,[2] when they were husband and wife.  Custom Kits I, 83 Mass. App. Ct. 1125.  Michael was president and Shawn was treasurer and secretary, and each held fifty percent of the shares of Custom Kits.  Id.  The Tessiers divorced on June 21, 2010, and each retained their fifty percent interest in Custom Kits.  Id.

On November 24, 2010, Custom Kits commenced this action in the Superior Court alleging that Shawn had breached her

---

[2] As the Tessiers share a common last name, we refer to them individually by their first names.  For clarity, we also refer to Phillip J. Ryznal individually by his first name.

fiduciary duties to Custom Kits as a shareholder and officer of the corporation by misappropriating or converting corporate funds for her personal benefit and fraudulently concealing her conduct from Michael, as president of Custom Kits. The complaint further alleged that the Ryznal defendants fraudulently filed inaccurate and incomplete tax returns on behalf of Custom Kits and committed professional negligence, which prevented Michael from discovering the misappropriations.[3]

After the judgment of divorce was entered, and approximately nine months after this action was commenced, Shawn sought modification of the divorce judgment.[4] Shawn and Michael agreed to a "stipulation on modification judgment," which was

---

[3] Initially, summary judgment was granted to the defendants on the ground that the doctrine of res judicata barred the suit because Michael could have litigated the corporation's claims in the divorce action. See Custom Kits I, 83 Mass. App. Ct. 1125. A panel of this court reversed, holding that the corporation's claims were separate and distinct from the divorce action, and the corporation's claims of fraud, negligence, and misappropriation were not "actually litigated" in the divorce action. Id., citing TLT Constr. Corp. v. A. Anthony Tappe & Assocs., 48 Mass. App. Ct. 1, 5 (1999).

[4] Shawn asserted that she had been wrongfully terminated from a corporation of which she was a fifty percent owner, she was making substantially less money in her current employment, and expenses had increased because Shawn and Michael's youngest child had been accepted to college. She requested that Michael be ordered to pay child support and share post high school educational expenses. Michael answered and asserted a counterclaim requesting that due to Shawn's misappropriation of $286,000, Michael, among other things, be awarded full ownership of the corporation and their joint real estate and personalty, and that Shawn be required to pay Michael $286,000.

approved as fair and reasonable by a judge of the Probate and Family Court and entered as a modification judgment.  The modification judgment provided that Michael would pay Shawn $58,000 "as a full and final satisfaction of all claims including but not limited to past present and future child support, 'lost wages,' wrongful discharge, attorney's fees, [and] compensation to [Shawn] for [Michael's] purchase of her fifty percent (50%) interest in the [p]arties' jointly owned company, Custom Kits . . . ."  The modification judgment allocated $39,780.01 for redemption of Shawn's interest in Custom Kits.[5]  It also provided that the instant action against Shawn would be dismissed with prejudice, but that Shawn would execute a statement under oath detailing her communications with Phillip.  Although Custom Kits dismissed its claims against Shawn, Shawn's motion for entry of separate and final judgment, opposed by Phillip, was denied.  When Custom Kits executed a stipulation of dismissal of its claims against Shawn, it expressly provided that Custom Kits's claims against the Ryznal defendants "remain[ed] in full force and effect."

On remand to the Superior Court, Custom Kits's case resumed; after a number of delays and failures to appear, the court entered a judgment as to liability on November 21, 2017,

---

[5] The remaining allocations were $8,600 for child support; $14,622 for current and future college tuition and expenses; and $6,998 for wrongful discharge and lost wages.

defaulting the Ryznal defendants.  Thereafter, the judge conducted an assessment of damages hearing on November 30, 2017, which concluded on December 13, 2017.  The judge found that Phillip reasonably should have known that there were errors and omissions being made in the information provided by Shawn on behalf of the plaintiff corporation.[6]  In addition, the judge found that Phillip had a professional obligation to report that information to Michael, the president of the corporation, and had he done so, the corporation would have avoided losing $289,866.  The judge found that the testimony of Shawn, denying misappropriating any funds, was not credible.

Ultimately, however, the judge concluded that because, through modification of their divorce judgment, Michael had acquired Shawn's shares of the corporation and had agreed to pay her $50,000 and to dismiss all claims against her, the company had been made whole.  Thus, although Phillip had been negligent, the judge concluded that there were no outstanding damages to the plaintiff corporation in view of the settlement with Shawn. The judge reasoned that pursuant to G. L. c. 231B, § 4, an award of damages against one tortfeasor must be reduced by any amount that has been paid by another tortfeasor for the same injury.

---

[6] The judge noted that Phillip's testimony "generally was an attempt to try and mitigate his role in providing tax services and/or financial advice to the plaintiff corporation and/or the Tessiers generally."

The judge found that "in buying out the 50% interest of Shawn Tessier [and giving] Ms. Tessier a full release for any and all liability in this present action, . . . the full value of her misappropriation was reimbursed to the plaintiff corporation since thereafter the corporation paid out an additional sum of money representing the excess owed to Ms. Tessier above and beyond the monies misappropriated. Accordingly . . . there is no money owed at this time since the plaintiff corporation has been paid in full."

Custom Kits filed a timely notice of appeal on June 15, 2018.[7]

Discussion. The judge correctly concluded that Custom Kits may have only one satisfaction of its damages. Whether or not Shawn and the Ryznal defendants are joint tortfeasors in the "strict sense, . . . [c]ommon damages stemming from an indivisible harm constitute the bedrock basis of the rule, long recognized in this and other jurisdictions, that a party can 'have but one satisfaction for the same injury.'" Short v.

---

[7] Custom Kits's motion for reconsideration was docketed on July 16, 2018; that motion was denied on July 23, 2018, with the notation that the "[p]laintiff does not raise any new evidence and/or law, but only re-argues issues." Custom Kits did not file a new notice of appeal from the denial of its motion for reconsideration. Issues regarding the motion for reconsideration are therefore not before us, and we do not consider the submissions related to the motion for reconsideration, which were not otherwise before the Superior Court judge.

Marinas USA Ltd. Partnership, 78 Mass. App. Ct. 848, 858 (2011), quoting Murray v. Lovejoy, 17 F. Cas. 1052, 1055 (D. Mass. 1863). See G. L. c. 231B, § 4 (a).[8] Thus, "[i]n mitigation of damages, a defendant is entitled to show in evidence the amount of money paid or promised to the plaintiff by a joint tortfeasor on account of the same injury." Tritsch v. Boston Edison Co., 363 Mass. 179, 182 (1973). While it is true that a plaintiff may recover only a single damages award, an equally well-settled principle is that a plaintiff may settle with one tortfeasor and continue claims against another. General Laws c. 231B "permits a plaintiff to settle with one joint tortfeasor and still have recourse against remaining tortfeasors . . . ." Slocum v. Donahue, 44 Mass. App. Ct. 937, 939 (1998), quoting Elias v. Unisys Corp., 410 Mass. 479, 482 (1991). Indeed, "a plaintiff injured by more than one tortfeasor may sue any or all of them

_____

[8] General Laws c. 231B, § 4 (a), provides:

"When a release or covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury:

"(a) It shall not discharge any of the other tortfeasors from liability for the injury unless its terms so provide; but it shall reduce the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater."

The statute serves the dual purposes of encouraging settlements and preventing collusion amongst the settling parties. Noyes v. Raymond, 28 Mass. App. Ct. 186, 189 (1990).

for her full damages." Shantigar Found. v. Bear Mountain Bldrs., 441 Mass. 131, 141 (2004).

Settlements are motivated by a wide range of factors, some nonmonetary, and may involve significant payments or no payment at all. In the context of considering whether a settlement had been made in good faith for purposes G. L. c. 231B, § 4, or whether a tortfeasor also was liable to a joint tortfeasor for contribution, we have said that "[t]he fact that the amount of a settlement is low in comparison to the plaintiff's estimate of [his] own damages, by itself, is . . . not material. A relatively low settlement might well reflect uncertainty whether the settling party would be found liable, uncertainty whether the damages would be proved, or the general unpredictability of juries on both liability and damage issues. Even where a claimant receives nothing in exchange for releasing a defendant, the statute may preclude a claim by a codefendant for contribution" (emphasis added). Noyes v. Raymond, 28 Mass. App. Ct. 186, 190 (1990). We add to those considerations, that whether a judgment obtained against a particular tortfeasor would be collectible may be a consideration. "A rule whereby a determination of lack of good faith could be based only on the amount of a settlement would 'require trial courts to apply an unworkable standard to every settlement. It [would] clog our trial courts with unnecessary hearings, discourage the

settlement of legitimate claims, and severely strain the resources of the parties and the trial and appellate courts of this state.'"  Id. at 190, quoting Tech-Bilt, Inc. v. Woodward-Clyde & Assocs., 38 Cal. 3d 488, 502 (1985) (Bird, C.J., dissenting).

Here, the Probate Court modification judgment, on its face, allocated no amount for the dismissal of Custom Kits's claims against Shawn in this Superior Court action.  The burden of coming forward with some showing of lack of good faith in allocating no financial sum for the dismissal of Custom Kits's claims against Shawn was on the Ryznal defendants.  Noyes, 28 Mass. App. Ct. at 191.  Custom Kits contends that the Ryznal defendants did not even offer the modification judgment into evidence at the assessment of damages hearing, but concedes that it was in the record, having been attached to the Ryznal defendants' opposition to Shawn's earlier motion for entry of a separate and final judgment dismissing the claims against her. Assuming without deciding that it was proper for the judge to consider the modification judgment, that judgment allocated $39,780 for Michael's purchase of Shawn's shares of Custom Kits and made no mention of a discount in exchange for the dismissal of Custom Kits's claims against Shawn.  Both Michael and Shawn testified at the assessment of damages hearing, and the issue of the modification judgment and its connection to the dismissal of

Custom Kits's claims against Shawn was barely explored. Shawn was asked whether, as part of the modification judgment, she was required to pay any of the "missing" $288,000,[9] and she replied that she was not. While the judge was not required to believe Shawn, evidence that Michael received a $288,000 discount was exceedingly thin. To the extent that circumstances of the settlement were suggestive of a "discount" of some amount, it was certainly open to counsel to delve into that issue at the assessment of damages hearing. Counsel chose not to do so.

Moreover, the judge made no finding as to the value of Custom Kits. We are thus unable to make a determination whether the judge's inference -- that the $39,780 allocation in the modification judgment for Michael's purchase of Shawn's interest in Custom Kits must have included a nearly $288,000 credit -- was reasonable. We have found no evidence in the record of the company's value, aside from an affidavit that was not properly part of this record, and which, in any event, does not warrant a conclusion that the purchase price was discounted.[10]

---

[9] The questioning at the assessment of damages hearing indicated the damages were understood to be in the amount of $288,000; the judge ultimately concluded that the defendants' negligence caused damages in the amount of $289,866. The difference is not material to this appeal.

[10] We decline to consider Custom Kits's expert's affidavit submitted with Custom Kits's motion for reconsideration as, in the absence of an appeal from the denial of that motion, it is

On the record presented, we conclude that the judge's inference that there must have been a nearly $290,000 credit for the purchase of Shawn's shares is based at least in part on an unsupported assumption that Michael's decision, on behalf of Custom Kits, to dismiss the claims against Shawn had to have been supported by such consideration.  Here, however, in the context of addressing the issues related to the financial and emotional aspects of their divorce, there are many reasons Michael could have agreed on behalf of Custom Kits to dismiss the complaint against Shawn.  To name just one, having in-depth knowledge of Shawn's financial status, Michael may well have concluded that Shawn would be unable to pay any judgment against her.  In any event, it was clearly erroneous to conclude that the plaintiff had been made whole based on no more than (i) the mere existence of a settlement with Shawn of multiple legal claims and (ii) hearsay assertions that a discount had been given on the costs of acquiring Shawn's interest in Custom Kits that might support an offset in this case.[11]

Conclusion.  So much of the judgment as dismissed Custom Kits's claims against Phillip J. Ryznal and Professional Tax Services of Oxford, Inc., is vacated, and the matter is remanded

_____

not properly before us and the judge did not have the benefit of it.

[11] Given the result we reach, we need not address the other issues raised by Custom Kits on appeal.

for a new assessment of damages.  On remand, the only issue for consideration shall be whether the $39,780.01 paid for Shawn Tessier's share of Custom Kits reflected a discount attributable to Custom Kits's dismissal of its claims against Shawn in this action.  In all other respects, the judgment is affirmed.

<u>So ordered</u>.